Filed 12/26/14  Tyshkevich v. Countrywide Home Loans CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SVETLANA TYSHKEVICH, | C070764 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV26731) |
| v. | |
| COUNTRYWIDE HOME LOANS, INC. et al., | |
| Defendants and Respondents. | |

In this action by a homeowner alleging fraud as a means to prevent a nonjudicial foreclosure (Civ. Code, § 2924 et seq.; undesignated statutory references are to the Civil Code), plaintiff Svetlana Tyshkevich, in propria persona, appeals from a judgment of dismissal following the sustaining of a demurrer to her second amended complaint without leave to amend, in favor of defendants Countrywide Home Loans, Inc. (Countrywide), dba America's Wholesale Lenders, Inc. (America's Wholesale), ReconTrust Company, N.A. (ReconTrust), and Mortgage Electronic Registration

1

Systems, Inc. (MERS). Plaintiff also challenges the trial court's denial of her motion for sanctions (Code Civ. Proc., § 128.7) against defense counsel for a false statement in a demurrer and motion to strike a prior pleading.

Plaintiff contends on appeal that (1) defendants lack standing to foreclose because they assigned their interests to others, and purported assignments and substitutions of trustees are void because the documents were false and forged, leaving a defect in the chain of title; (2) the trial court abused its discretion in denying leave to amend; and (3) the trial court misconstrued the sanctions statute.

We conclude (1) any irregularities in assignments do not entitle plaintiff to stop nonjudicial foreclosure or recover damages; (2) plaintiff fails to show how amendment can cure the pleading's defects; and (3) the trial court properly denied sanctions where the false statement was made in superseded filings no longer at issue when plaintiff filed the sanctions motion.

We accordingly affirm the judgment of dismissal and the order denying sanctions.

FACTS AND PROCEEDINGS

"In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading," but we do not assume the truth of contentions, deductions, or conclusions of law. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052 (*Intengan*).) "We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory. [Citation.]" (*Ibid.*) We also consider matters which have been or may be judicially noticed. (*Sacramento Brewing Co. v. Desmond, Miller & Desmond* (1999) 75 Cal.App.4th 1082, 1085, fn. 3.) To the extent the factual allegations conflict with the contents of attached exhibits, we accept as true the exhibits. (*Barnett v. Fireman's Fund Ins. Co*. (2001) 90 Cal.App.4th 500, 504-505.) A plaintiff may not

2

avoid a demurrer by filing an amended complaint suppressing facts which proved fatal in the original complaint. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877.)

We accordingly consider the full exhibits (Deed of Trust, etc.) attached to the original complaint and not merely the excerpts attached to the second amended complaint.

In January 2005, plaintiff, a Coldwell Banker licensed real estate broker, financed the purchase of a residence on Lupine Lane in Auburn. In March 2006, she refinanced the house with a $1.3 million loan from defendant Countrywide dba America's Wholesale. She signed a promissory note and Deed of Trust.

The Deed of Trust stated:

The Lender was America's Wholesale Lender;

The Trustee was ReconTrust Company, N.A. with an address in Thousand Oaks, California;

The Beneficiary was MERS, "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. . . ." The Deed of Trust stated: "TRANSFER OF RIGHTS IN THE PROPERTY [¶] The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS . . . [¶] . . . [¶] Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property . . . . Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including but not limited to, the right to foreclose and sell the Property . . . ."

The promissory note, labeled "ADJUSTABLE RATE NOTE" began with the caution: "THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE

INTEREST RATE AND THE MONTHLY PAYMENT. . . ." The Note named America's Wholesale as Lender. A disclosure statement stated the lender had elected to name MERS, which operates an electronic mortgage tracking system, and as the mortgagee in a nominee capacity, but this did not affect plaintiff's obligation to the lender under the promissory note.

In August 2007, Countrywide informed plaintiff her payments would soon triple. Plaintiff claims she was shocked. She was unable to refinance, contacted Countrywide about loan modification, and was told modification was for people already in default. Plaintiff defaulted on the loan beginning in November 2007.

In January 2008, plaintiff received a NOTICE OF DEFAULT from Countrywide, stating it was servicing the loan on behalf of the noteholder.

Plaintiff and Countrywide engaged in discussions about loan modification, but was told she did not meet investor guidelines.

In June 2008, plaintiff received a recorded Notice of Default and Election to Sell under Deed of Trust, naming ReconTrust Company in Simi Valley (not ReconTrust Company "N.A." in Thousand Oaks as stated in the Deed of Trust), as agent for the beneficiary MERS c/o Countrywide under the Deed of Trust. ReconTrust Company in Simi Valley later registered as a domestic California entity.

Plaintiff and Countrywide continued discussions about loan modification, Countrywide offered payment plans, but no agreement was finalized.

In September 2008, plaintiff received a Substitution of Trustee, substituting ReconTrust Company (Simi Valley address) as Trustee. Plaintiff also received a Notice of Trustee Sale, naming ReconTrust Company in Simi Valley as Trustee and "debt collector."

Plaintiff continued seeking loan modification but received a letter from Countrywide dated February 2, 2009, stating "Countrywide is not delegated by the investor to perform modifications on the loan."

4

In January 2010, plaintiff received a second Substitution of Trustee substituting ReconTrust Company N.A. in Simi Valley as Trustee. Plaintiff also received a second Notice of Trustee's Sale naming ReconTrust Company N.A. as Trustee and "debt collector" at the Simi Valley address.

Plaintiff later received a third Notice of Trustee Sale and Substitution of Trustee naming ReconTrust Company, N.A (Simi Valley address) as Trustee.

In February 2010, plaintiff hired a forensic auditor.

In March 2010, plaintiff received a letter from (nonparty) Bank of America Home Loans, stating plaintiff did not qualify for modification.

In April 2010, plaintiff sent defendants "Qualified Written Request." A response from Bank of America stated there was no obligation to respond to most of the inquiries, but "the current owner of the Note is Wells Fargo Bank, as Trustee on Behalf of the Harborview 2006-12 Trust Fund."

In February 2011, a Corporation Assignment of Deed of Trust was recorded, assigning all beneficial interest in the Deed of Trust, together with the Note, to BAC Home Loans Servicing, LP, fka [formerly known as] Countrywide Home Loans Servicing, LP for the Harborview 2006-12 Trust Fund.

Meanwhile, plaintiff filed her original complaint on March 3, 2010, for "MONETARY DAMAGES, STATUTORY DAMAGES, PUNITIVE DAMAGES, INJUNCTIVE RELIEF AND DECLARATORY RELIEF," alleging (1) fraud, (2) intentional misrepresentation, (3) violation of section 2923.6 (loan modification), (4) violation of section 1572 (fraud), and (5) violation of Business and Professions Code section 17200 (unfair business practices). The trial court sustained a demurrer with leave to amend, stating the fraud and misrepresentation claims "failed to plead any facts constituting fraud with sufficient particularity. [¶] The allegations focus on enforceability, transfer and possession of the promissory note without alleging untrue statements by any defendants. [¶] Additionally, the complaint fails to comply with the

heightened pleading requirements required to allege fraud against any entity. It is a high standard. [¶] The third cause of action for violation of Civil Code 2923.6 fails to state a claim for relief. Nothing in 2923.6 creates a private right of action in the borrower to force the lender to make a loan modification, particularly on terms unilaterally proposed by the plaintiff. That is not allowed under that [C]ode. [¶] The fifth cause of action fails to state a claim in that no underlying predicate violation of law is alleged. Insufficient facts are stated to support claims of unfair or fraudulent practices."

In November 2010, plaintiff filed a first amended complaint, adding new defendants, new factual allegations, and new claims about predatory lending using false appraisals and securitization and sale of plaintiff's loan on the secondary market.

In April 2011, the trial court granted defendant's motion to strike the first amended complaint as exceeding the scope of leave to amend, gave plaintiff another chance to amend, and dismissed the demurrer as moot. Plaintiff filed an ex parte application to add new defendants, claims, and theories -- which the trial court denied.

In May 2011, plaintiff filed the second verified amended complaint which is the operative pleading in this appeal. The second amended complaint alleges five causes of action: (1) fraud, (2) intentional misrepresentation, (3) violation of section 2926.2, (4) violation of section 1572 (fraud), and (5) violation of Business and Professions Code section 17200.

The first cause of action for fraud alleges defendants intended to defraud plaintiff and foreclose on her home without proper authority and necessary documents. Whereas the Deed of Trust names ReconTrust Company, *N.A.* in Thousand Oaks, California, as Trustee, the Notice of Default recorded June 16, 2008, was issued by a "totally different company" -- ReconTrust Company in Simi Valley. There was no valid assignment to the Simi Valley entity, because the various Substitutions of Trustees were unsigned, undated, unrecorded, and/or included or omitted "N.A." as if it did not matter. Although the full Deed of Trust attached to the original complaint stated MERS had broad authority as

6

nominee for the lender and lender's assigns, the second amended complaint alleged the Deed of Trust did not authorize MERS to substitute the trustee.

The complaint alleges the Notices of Trustee Sale are null and void because they are undated, unsigned by an authorized person, unrecorded, omit "N.A." from some references to ReconTrust, and/or misstate the amount owed.

Plaintiff alleges the Corporation Assignment of Deed of Trust recorded on February 4, 2011, is invalid because the notary public is located in California, but MERS is not. The document states it transfers all beneficial interest together with the Note, but the Note had already been sold to investors.

Plaintiff alleges none of the defendants have standing to conduct a nonjudicial foreclosure. Plaintiff also alleges defendants violated Penal Code sections 115 and 115.5, which criminalize the recording of false documents.

The second cause of action for intentional misrepresentation alleged defendants conspired to defraud plaintiff, misrepresented Countrywide as the lender, concealed the identity of the true lender, and lured her into default by promising her help with loan modification.

The third cause of action alleges the Bank defendants violated section 2923.6 by failing to perform a comparative calculation between loan modification and net value through foreclosure.

The fourth cause of action alleges defendants violated section 1572 (actual fraud) by (1) failing to disclose facts as to who were the real parties, (2) committing appraisal fraud by using an inflated value when making the loan, and (3) by violating underwriting standards by granting risky loans at the time plaintiff obtained her loan.

The fifth cause of action alleges defendants committed unfair business practices and unfair competition in violation of Business and Professions Code sections 17200 and 17500, by predatory lending practices, misleading advertising, processing money from

7

unknown sources in violation of the Patriot Act, concealing material facts, recording false documents, and luring plaintiff into default.

The second amended complaint adds allegations apparently directed at an unpleaded predatory lending claim. Plaintiff alleges Countrywide sold her loan in 2006 as a "mortgage backed security" to Wells Fargo Bank, N.A., as Trustee on Behalf of the Harborview 2006-12 Trust Fund. Plaintiff alleges defendants lured her into a predatory loan by false appraisals, violation of underwriting standards, and intent to sell mortgages, including plaintiff's mortgage, above their actual values to bilk investors, knowing the scheme would result in a liquidity crisis. Plaintiff alleges Countrywide lacked power to modify her loan, and defendants' concealment of the true owner deprived her the opportunity to negotiate loan modification with that owner. The pleading alleges none of the defendants are holders of the Note or nonholders entitled to payment under Commercial Code sections 3301 and 3309.

Plaintiff also alleges Bank of America "being a servicer is trying now to recreate the paperwork (false and sham docs and assignments with robo-signatures) attempting, at the middle of litigation, to create standing for [defendants] . . . ." Plaintiff alleges "robo-signers" are illegal, rendering documents void. Plaintiff alleges "there likely also exists evidence that the Note already been [*sic*] paid off by credit default swaps purchased by the mortgage pool," which may give some insurance a subrogation claim, not these defendants.

The second amended complaint asks for declaratory relief, damages, and an order enjoining defendants from proceeding with the foreclosure.

Defendants moved to dismiss or strike the second amended complaint, on the grounds it defied the court's prior rulings by "burying" new claims and theories. Defendants demurred to the second amended complaint on the grounds it does not state facts sufficient to constitute a cause of action, and the entire complaint is uncertain, ambiguous, and unintelligible.

Before the hearing on the demurrer and motion to strike the *second amended complaint*, plaintiff in July 2011 filed a motion for sanctions (Code Civ. Proc., § 128.7) against defense counsel, on the ground the demurrer and motion to strike the *first amended complaint* falsely stated plaintiff's loan was never sold on the secondary market, contradicting plaintiff's allegations of predatory lending. In opposition to the sanctions motion, the defense did not dispute the statement was false but asserted defense counsel "did not have sufficient information to know that these statements were not accurate"; and it did not matter because that was not the basis for the trial court's ruling. Defendants noted the statute allows a party to avoid sanctions by correcting or withdrawing the offending filing, but their false statement appeared only in superseded filings that defendant could no longer correct or withdraw, since the court had already stricken the first amended complaint.

On October 24, 2011, the trial court sustained the demurrer to the second amended complaint without leave to amend, ruled the motion to strike was moot, and denied plaintiff's motion for sanctions. The court took judicial notice of the existence and recorded status of documents. The court denied plaintiff's request for judicial notice of federal consent orders. The court ruled (1) the fraud-based claims fail due to lack of specificity, (2) the challenge to defendants' standing fails as a matter of law, (3) section 2923.6 neither requires the lender to modify the loan nor affords plaintiff a private right of action, (4) no facts of unfair competition are alleged, (5) the entire pleading is uncertain, ambiguous, and unintelligible, and (6) plaintiff failed to allege tender. Though the trial court faulted plaintiff for repeating new allegations in violation of prior rulings, the trial court concluded the motion to strike was moot.

The court denied plaintiff's motion for sanctions, noting plaintiff did not file the motion until it was too late for defendants to correct or withdraw the filings in which the false statement appeared.

In November 2011, plaintiff filed an application for reconsideration of the rulings or, in the alternative, leave to amend the complaint again. Plaintiff submitted three documents: (1) A letter dated April 20, 2011, from a law firm stating the current owner of the promissory note is BAC Home Loans Servicing, LP (BAC), (2) an undated letter from Bank of America stating that effective July 1, 2011, servicing of home loans from BAC transfers to Bank of America and the debt is owed to Wells Fargo (Harborview 2006-12), and (3) a settlement check and letter from a case entitled FTC v. Countrywide, in which plaintiff received a settlement payment. The trial court denied the application.

Plaintiff appeals from the ensuring judgment of dismissal entered in February 2012. In May 2013, we denied plaintiff's request for judicial notice of a Notice of Rescission of Declaration of Default.

DISCUSSION

I

*Preliminaries*

Plaintiff begins her appellate brief by asserting her "language for all business transactions is Russian/Ukrainian," and English places her at a disadvantage in understanding documents. Yet her verified complaint states she is a real estate broker and worked for Coldwell Banker for nine years, and she told the trial court she has a real estate license which she would lose if she violated California law.

Plaintiff next cites federal authorities for the proposition that a pro. per. plaintiff's pleading may not be held to the same standard as pleadings prepared by attorneys. (*Haines v. Kerner* (1972) 404 U.S. 519, 520-521 [30 L.Ed.2d 652]; *Jenkins v. McKeithen* (1969) 395 U.S. 411, 421 [23 L.Ed.2d 404]; *Puckett v. Cox* (6th Cir. 1972) 456 F.2d 233, 236; *Picking v. Pennsylvania R. Co*. (3d Cir. 1945) 151 F.2d 240, 244, overruled on other grounds in *Bauers v. Heisel* (3d Cir. 1966) 361 F.2d 581.) However, most of the cited cases involved prisoners who did not have access to counsel, and the United States

10

Supreme Court has since explained: "While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed [citations and fn. omitted], and have held that some procedural rules must give way because of the unique circumstance of incarceration [citation] . . . , we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. [Fn. omitted.] As we have noted before, 'in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.' [Citation.]" (*McNeil v. United States* (1993) 508 U.S. 106, 113 [124 L.Ed.2d 21].) And *Picking, supra*, 151 F.2d at p. 244, merely said it would disregard "technicalities" -- inept pleading in 154 paragraphs difficult to follow and understand -- in a complaint raising constitutional claims, prepared by a pro se litigant who was also an attorney. Federal circuit court of appeal opinions are not binding on us. (*Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 879 (*Alicia T.*).)

The rule in California is that pro. per. litigants are held to the same standards as lawyers. (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.) "A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

II

*Demurrer*

*A. Standard of Review*

On review of a dismissal following demurrer, we independently review the ruling on demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action. (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1378.) In doing so, we give the complaint a reasonable interpretation, reading it as a whole and its parts in

11

their context.  (*Ibid.*)  We treat the demurrer as admitting all material facts properly pleaded, but we do not assume the truth of contentions, deductions or conclusions of law.  (*Ibid.*)

"In order to prevail on appeal from an order sustaining a demurrer, the appellant must affirmatively demonstrate error.  Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer.  [Citation.]"  (*Intengan, supra*, 214 Cal.App.4th at p. 1052.)  "We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained.  [Citation.]"  (*Ibid.*)

If we find that an amendment could cure the pleading's defects, we must find the trial court abused its discretion in denying leave to amend, but the plaintiff bears the burden of proving an amendment would cure the defect.  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153 (*Gomes*).)

### *B.  Tender*

We first reject defendants' contention that the lawsuit is barred by plaintiff's failure to tender the amount of the indebtedness.

The sale of the property has not yet occurred.  "While the tender requirement may apply to causes of action to *set aside* a foreclosure sale, a number of California and federal courts have held or suggested that it does not apply to actions seeking to *enjoin* a foreclosure sale--at least where the lenders had allegedly not complied with a condition precedent to foreclosure. . . ."  (*Intengan*, *supra*, 214 Cal.App.4th at pp. 1053-1054.)

Defendants cite only one case applying the tender rule where the plaintiffs sought to prevent a foreclosure sale -- *Arroyo v. Aurora Bank, FSB* (C.D. Cal. 2012) 2012 WL 137854 (*Arroyo*).  But it is an unpublished order of a federal district court judge, denying a plaintiff's request for preliminary injunction.  The judge cited only a case involving an action to set aside a foreclosure sale; the judge then simply stated, without analysis or

12

supporting authority, that the same rule applies in actions to avoid foreclosure. The unpublished case has no precedential value. Lower federal court opinions are not binding on us. (*Alicia T., supra*, 222 Cal.App.3d at p. 879.) While we may consider unpublished *federal* opinions if, despite their lack of precedential value, we find them persuasive (*City of Hawthorne ex. rel. Wohlner v. H&C Disposal Co*. (2003) 109 Cal.App.4th 1668, 1678, fn. 5), the lack of analysis in *Arroyo* leaves it with no persuasive value at all.

Lack of tender does not preclude this lawsuit.

### *C. Fraud and Misrepresentation Claims*

The elements of fraud and intentional misrepresentation are a false representation of a material fact or concealment by a party under a duty to disclose, with intent to induce reliance, justifiable reliance by the plaintiff, and resulting damage. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.) Each element must be pleaded with specificity. (*Ibid*.)

Section 2923.3 authorizes "a mortgagee, trustee, beneficiary, or authorized agent" to provide the notice of default and notice of sale. Section 2924a provides: "If, by the terms of any trust or deed of trust a power of sale is conferred upon the trustee, the attorney for the trustee, or any duly authorized agent, may conduct the sale and act in the sale as the auctioneer for the trustee." Here the Deed of Trust -- on a page omitted from the attachments to the second amended complaint but included as an attachment to the original complaint -- confers the power of sale on the trustee. The Deed of Trust also authorizes the Lender to change trustees and requires recording of the substitution.

Plaintiff argues Countrywide concealed the identity of the real creditor, and none of defendants had the right to foreclose because none is the lender, beneficiary with power of sale, a legally appointed trustee, or authorized agent. According to plaintiff, defendants lack standing because purported assignments and substitutions were void as false, fabricated, and forged documents, leaving a defect in the chain of title.

13

However, we need not address the parties' arguments on these points because, in nonjudicial foreclosures, homeowners cannot *prevent* a sale of the property by a preemptive court action challenging irregularities in the transfer of rights and obligations under assignments and substitutions and seeking a judicial determination whether the person initiating the foreclosure process is authorized to do so. (*Siliga v. Mortgage Electronic Registration Systems, Inc*. (2013) 219 Cal.App.4th 75, 82.) A preeemptive suit is one that seeks to create an additional requirement for the foreclosing party, apart from the comprehensive statutory requirements, by requiring the foreclosing party to demonstrate in court that it is authorized to initiate a foreclosure. (*Ibid.*; see also, *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 511 (*Jenkins*) [defects in transfer of a promissory note do not allow homeowners to challenge nonjudicial foreclosure, because the homeowner's obligation remains the same, even if subsequent assignments were invalid]; *Gomes, supra*, 192 Cal.App.4th at p. 1155 [notice of default may be recorded by trustee, mortgagee, beneficiary, or any of their authorized agents].) The recognition of a right to sue to determine a nominee's authorization would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for purpose of delaying valid foreclosures. (*Gomes, supra*, 192 Cal.App.4th at p. 1155.)

Here plaintiff seeks not only to prevent foreclosure but also to recover damages for fraud, including loss of equity in her house, loss of income, reduced credit scores, costs related to protecting herself, as well as emotional distress and glaucoma attacks. However, these alleged damages arose from adjustment of the interest rate, not from any irregularities in assignments, and plaintiff fails adequately to allege justifiable reliance or causation.

Plaintiff also argues defendants misrepresented the true amount owed on the Note, but since she does not allege tender, she fails to explain how this allegation states a claim for relief.

14

Accordingly, plaintiff fails to show any basis for the fraud and misrepresentation claims.

### D. Other Claims

As to plaintiff's claim that the bank defendants violated a supposed statutory duty under section 2923.6 to modify the loan if it will yield a greater profit than foreclosure, plaintiff fails to show a viable claim. Section 2923.6 merely states "any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party . . . and . . . a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which" the loan is in default and anticipated recovery under a loan modification exceeds anticipated recovery through foreclosure on a net present value basis. (§ 2923.6, subd. (a).) A homeowner has no private right of action under this statute, which "merely expresses the *hope* that lenders will offer loan modifications on certain terms." (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 222, fn. omitted.) Nor has plaintiff shown entitlement to pursue a section 2923.6 claim to demand proof that Countrywide submitted her loan modification to Wells Fargo, as she asserts in her reply brief.

At oral argument, plaintiff suggested Countrywide told her to stop payments so she could obtain loan modification. The statement of facts in her appellate brief asserted Countrywide "instructed" her (emphasis omitted) to stop paying in order to qualify for loan modification, "luring" her into default. The complaint claimed defendants "lured" her into default by promising modification if she stopped paying. However, the appellate brief offers no analysis to develop this point, and we may therefore disregard it. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Moreover, plaintiff's insinuation of a promise by Countrywide is not borne out by the specific *factual* allegations of the

15

complaint which merely asserted: "Plaintiff called on [August 23, 2007] and talked to Heather, Countrywide's representative, who clearly stated that the Lender cannot do modification unless the Borrower is at least 'three months behind on her payments.' [¶] . . . A few days later on August 27, 2007 Plaintiff called Countrywide again and spoke with account manager Kathleen Kramer who confirmed that in order to apply for a loan modification the applicant has to be 90 days behind on the payments. Given her conversations with both Countrywide employees who told [plaintiff] that [she] must be delinquent to qualify for modification, she had no other option but default on the mortgage payments beginning in November of 2007." There was no factual allegation in the complaint and no analysis in the appellate brief supporting an actionable claim on this point.

As to the unfair competition claim, plaintiff admits on appeal that it is based on the same facts as the other causes of action. The unfair competition claim fails, because it must be based on violation of a specific underlying law (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co*. (1999) 20 Cal.4th 163, 180), and no such violation is properly pleaded in this case.

Plaintiff says the trial court violated her due process rights to property, by depriving her of the opportunity for a fair hearing on the merits. However, she did have a fair hearing on the demurrer. Moreover, we disregard the constitutional claim because plaintiff has forfeited it by failing to provide supporting analysis or authority. (*Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.)

Plaintiff, by lack of supporting analysis or authority, similarly forfeits her claim that she is entitled to declaratory relief to identify who owns the Note and Deed of Trust and who has the right to proceed with nonjudicial foreclosure. Moreover, such relief would undermine the nonjudicial nature of the process.

Plaintiff fails to show grounds to reverse the order sustaining the demurrer.

16

## E. Leave to Amend

Plaintiff contends the trial court erred by denying her leave to amend the second amended complaint. We conclude she fails to show grounds for reversal.

If an amendment could cure the defect, then denial of leave to amend constitutes an abuse of trial court discretion. (*Gomes, supra*, 192 Cal.App.4th at p. 1153.) In order to obtain leave to amend on appeal, plaintiff has the burden of proving that an amendment would cure the pleading's defects. (*Ibid.*) Such a showing can be made for the first time on appeal. (*Id.* at pp. 1153-1154.)

In plaintiff's opening brief on appeal, under the heading of leave to amend, it is not clear what amendment plaintiff proposes to avoid dismissal. She rehashes points already discussed. Under the separate heading that defendants lack standing, plaintiff asserts the recorded assignments violate federal law, but she does not seek leave to add any such claims, nor does she show she could plead facts sufficient to meet all elements of such claims. In the Introduction to her appellate brief, she speaks of predatory lending, mortgage backed securities, robo-signing, and federal authorities' asserted censure of such activities. Her second amended complaint alleges that in April 2011 -- after she filed her original complaint in March 2010 -- federal agencies found deficiencies in the mortgage and foreclosure practices of MERS and Bank of America and entered Consent Cease and Desist Orders. She alleges her auditor informed her in May 2010 that she was a victim of predatory lending in violation of federal and state law, and an October 2011 audit revealed fraud. She alleges she reported the fraud to the Secretary of State, California's Attorney General, and the county District Attorney in January 2011. In February 2011, the assignment of the Deed of Trust executed by MERS to BAC Home Loans, formerly known as Countrywide, for the Harborview Trust, was recorded. In her reply brief, plaintiff argues the "new material fact" that the loan was sold on the secondary market warrants amendment.

17

In her reply brief, plaintiff claims she fashioned her second amended complaint in reliance on defendant's falsehood, and the judgment was based on the falsehood. Plaintiff believes defendants' admission on appeal that the statement was "incorrect" opens the door for her to amend. We disagree. The trial court struck the first amended complaint because it exceeded the scope of leave to amend. The falsehood was immaterial at the demurrer stage of proceedings, where the court assumes the truth of the complaint's allegations. (*Intengan, supra*, 214 Cal.App.4th at p. 1052.)

If plaintiff seeks leave to amend to add a new claim for predatory lending, she fails to meet her burden on appeal. When granted leave to amend after a demurrer, the plaintiff may not add a new cause of action without having obtained permission to do so, unless the new cause of action is within the scope of the order granting leave to amend. (*Harris v. Wachovia Mortgage, FSB* (2010) 185 Cal.App.4th 1018, 1023.) While there is a policy of great liberality in permitting amendments to pleadings (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945 (*Berman*)), a plaintiff seeking reversal when amendment is denied must make a reasonable showing of prejudice from the ruling. (*Ibid*.)

Claims for predatory lending are authorized by Financial Code sections 4970 to 4979.8, which "comprehensively regulate[] predatory lending practices in home mortgages." (*American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1254 [state statutes preempt city ordinance].) However, on appeal plaintiff does not address the legal requirements for such a claim and fails to show she can plead facts sufficient to state a cause of action for predatory lending.

Plaintiff fails to show how amendment of the complaint could survive demurrer.

Plaintiff fails to show grounds to reverse the judgment of dismissal.

18

## III

### *Denial of Motion for Sanctions*

Plaintiff claims the trial court erred in denying her motion for sanctions against defense counsel for falsely stating that plaintiff's loan had not been sold on the secondary market. We disagree.

We generally apply the abuse of discretion standard in reviewing a trial court's ruling on a motion for sanctions under Code of Civil Procedure section 128.7. (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 698.) But the availability of sanctions under the statute in connection with undisputed facts is a question of law subject to de novo review. (*Ibid*; *Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 591 (*Li*).)

Code of Civil Procedure section 128.7, subdivision (c)(1) states that the notice of motion shall be served "but shall not be filed with or presented to the court unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. . . ." The purpose of the statute is remedial, not punitive. (*Li, supra*, 177 Cal.App.4th at p. 591.) "By including the safe harbor in [Code of Civil Procedure] section 128.7, the Legislature intended to foster compliance with its provisions and to conserve judicial resources otherwise spent adjudicating a sanctions motion by affording a prescribed period of time during which a party may correct or withdraw a frivolous or improper pleading or motion without any penalty. [Citation.] If the merits of the objectionable document are resolved by the court prior to the expiration of the safe harbor period, there is nothing left to correct or withdraw, thereby undermining the remedial purpose of the safe harbor provision. . . ." (*Id*. at pp. 593-594 [reversed sanctions award for frivolous motion to vacate, where motion to vacate was heard and decided before expiration of the safe harbor period].)

19

Defense counsel made the false statement only in the demurrer and motion to strike the *first amended complaint*. Plaintiff did not serve the sanction motion until after the trial court had stricken the first amended complaint and plaintiff had filed the second amended complaint. After an amended pleading is filed, courts generally disregard the earlier pleading. (*Berman, supra*, 56 Cal.App.4th at p. 945.) There was no pending filing that defendants could correct or withdraw.

Plaintiff fails to show grounds for reversal of the order denying sanctions.

DISPOSITION

The judgment of dismissal and the order denying sanctions are affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


                                                    HULL            , Acting P. J.



We concur:



        MURRAY          , J.



        DUARTE          , J.



20