[No. B105552. Second Dist., Div. Seven. July 23, 1997.]

JACK BERMAN, Plaintiff and Appellant, v.
LEO EDWIN BROMBERG et al., Defendants and Respondents.

**COUNSEL**

B. E. Bergesen III, O'Brien & Harrington, William K. O'Brien, Colleen Duffy Smith, Straw & Gilmartin and Paul T. Gough for Plaintiff and Appellant.

Smith & Smith, David S. Smith and Lee S. Smith for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.** —Plaintiff appeals from a judgment entered in favor of defendants after the court denied plaintiff's motion for leave to file a third

amended complaint for violation of the Corporate Securities Act and breach of fiduciary duty. The principal issue is whether the trial court properly denied leave to amend on the ground that the proposed verified third amended complaint contained allegations contradicting prior verified complaints, rendering the third amended complaint a sham pleading.

## PROCEDURAL BACKGROUND

On July 18, 1995, Jack Berman (Berman) filed a complaint for accounting, audit, breach of contract, intentional and negligent misrepresentation, and declaratory relief arising out of his investment in Spakor Oil and Gas Associates, a limited partnership. A verified first amended complaint was filed on August 28, 1995, and contained essentially the same causes of action as the original complaint.

The first amended complaint alleged that Berman and defendant Leo Edwin Bromberg (Bromberg) have had a personal relationship going back 55 years and Berman trusted Bromberg; Bromberg "completely controlled" and was the alter ego of Spakor, Inc.; Bromberg also "completely controlled and as general partner" became the alter ego of Spakor Oil and Gas Associates, a limited partnership (Spakor Oil and Gas). Sometime prior to January 21, 1985, Bromberg told plaintiff that a $200,000 investment in Spakor Oil and Gas would develop an asset for him greater than his pension. On January 21, 1985, Berman executed an agreement of limited partnership; Bromberg requested Berman forward his check in the amount of $200,000 to defendants and offered to obtain a loan for this purpose at prime plus 3 percent. On March 4, 1986, defendants sent Berman a letter requesting that he sign a promissory note for $200,000 payable to Spakor Oil and Gas, and due on June 30, 1988; Berman executed the note on March 13, 1986.

In August 1987, defendants "forwarded to Berman a check for $100,000 and asked that it be returned. Berman received the $100,000 check on April 20, 1987 and deposited [it] in his account. Berman immediately returned his personal check in the sum of $100,000 to defendants . . . ." In May 1988, defendants requested that Berman send them $75,000, which he did; Berman was under the impression that the $75,000 was a loan to defendants. In December 1988, Berman received the sum of $25,000, and in May 1989, Berman received the sum of $20,000. In 1989, defendants told Berman that all capital had been returned to the investors.[1]

On July 11, 1994, and prior thereto, Berman asked for an accounting from defendants and also copies of financial statements, but he received nothing

---

[1]Neither the pleadings, nor anything else in our record clarifies the allegations in the foregoing paragraph. It is unclear whether the checks or moneys "received" by Berman were proceeds of a loan obtained from some third party for the purpose of investing as a limited

even though the original partnership agreement provided for preparation of annual financial statements to be supplied to each limited partner; even though the partnership agreement provided for an audit on five days' written notice, defendants' accountant stated that he had never seen any books or records and in preparing the annual reports for tax purposes he had relied on information supplied by Bromberg. On July 18, 1994, Bromberg responded by sending Berman a check for $30,000, stating on its face that the moneys purchased Berman's interest in Spakor Oil and Gas; accompanying the check was a letter from Bromberg stating that "I am enclosing my check in the amount of $30,000 to purchase your interest in Spakor Oil & Gas Associates as of January 1, 1994."

In March 1995, Berman again requested defendants send financial information about the partnership, and defendants responded by letter dated March 21, 1995, stating that "you no longer have any interest in Spakor Oil and Gas Associates."

Berman "was obligated to defendants in the sum of $200,000, pursuant to his promissory note at all relevant times," and paid taxes on the moneys received from defendants, but received no interest or return on capital.

The first cause of action sought an accounting, the second cause of action sought an audit of the partnership books and records, and the third cause of action sought damages for breach of written contract on the theory that the partnership generated income and capital to which Berman is entitled under the provisions of the limited partnership agreement. The fourth cause of action, captioned negligent misrepresentation, alleged that defendants' representation that his investment would be worth more than his pension was untrue and that defendants made the representation without any reasonable grounds for believing it to be true and to induce Berman to rely upon it and to execute the promissory note. The fifth cause of action, captioned intentional misrepresentation, alleged that defendants held themselves out as possessing superior knowledge and special information, and their representations were treated as representations of fact and not opinion; Berman reasonably relied upon those representations as fact, and sustained damage. This cause of action also contains a concealment theory, alleging that defendants concealed and suppressed material facts relating to the profit of the entity involved with the intent to defraud plaintiff.

partner in Spakor Oil and Gas, or whether the checks were distributions from the partnership. We also question whether the various pleadings contain an error as to the date the $100,000 check was received, or whether there was more than one $100,000 check, as it is impossible for Berman to have received and deposited into his personal account a check for $100,000 in April 1987, when it is also alleged that defendants forwarded that check to him in August 1987.

Defendants filed an answer to the first amended complaint. As an affirmative defense, defendants alleged that they tendered payment in full to Berman for his entire interest in the partnership; Berman accepted payment and has never tendered return, or returned the payment to defendants; since July 18, 1994, plaintiff has not been a member of the partnership.

In February 1996, defendants filed a motion for judgment on the pleadings on numerous grounds, including the ground that Berman was not entitled to any relief pertaining to an act or omission of Spakor Oil and Gas because he sold his entire interest to Bromberg by cashing the $30,000 purchase check, which stated on its face it was for "Purchase of Jack Berman's Interest in Spakor Oil & Gas Associates." Plaintiff filed opposition to the motion for judgment on the pleadings, and also filed a motion for leave to file a second amended complaint. The request for leave to file a second amended complaint expressly stated that plaintiff intended to abandon all of the causes of action in the first amended complaint, and intended to assert two causes of action based on the same general set of facts but premised on two legal theories: (1) violation of California Corporations Code section 25401, untrue statements or omissions in connection with purchase or sale of security (asserted against Spakor, Inc., and Spakor Oil and Gas), and (2) a claim against Bromberg captioned "Joint and several liability of management principals or materially aiding personnel."[2]

The proposed second amended complaint, also verified, alleged that the limited partnership agreement constitutes a security within the meaning of California Corporations Code section 25019; paragraph 26 alleged that "Berman, at no time intended a sale of his interest in the limited partnership nor did he agree to such a sale. However, if Berman did so, he did so based upon untrue statements or omissions made by defendants, and each and all of them, on or around July 18, 1994, in connection with the purported sale of his interest in [Spakor Oil and Gas]." The first cause of action thus alleged that on July 21, 1994, Bromberg bought Berman's interest in Spakor Oil and Gas, retroactively as of January 1, 1994, for a total price of $30,000; Berman sold his interest when he cashed the check; defendants' written communication included an untrue statement or omitted to state a material fact necessary to make the statements made not misleading, i.e., that Berman's interest

---

[2] As admitted by plaintiff's counsel at a hearing on May 29, 1996, "there's been no change in the allegation of the facts as to the passing of a check and the various correspondence. That earlier complaint—the first amended complaint alleged what Mr. Berman's intention was at that point in time. Subsequent to that [defense counsel] filed a motion for judgment on the pleadings alleging that indeed a sale did take place. He convinced the court of that and convinced us of that. [¶] And we stipulate to the fact that [the] earlier motion for judgment on the pleadings was correct, that indeed there was a sale and that's the basis of the pleading in this complaint. But the facts haven't changed. Regardless of whether Mr. Berman's intent may have been one thing, the facts justify an inescapable conclusion that indeed a sale did take place in 1994 of this limited partnership interest."

in the limited partnership was in fact valued as of January 1, 1994, at $30,000; the communication was untrue and omitted to state that the value of Berman's interest in the limited partnership "far exceeded $30,000." The first cause of action sought, "in lieu of rescission," damages as a result of plaintiff's disposition of the security; on information and belief, plaintiff alleged that the value of the security on January 1, 1994, exceeded $500,000. The second cause of action alleged that Bromberg materially assisted in making the untrue statements and deceived or defrauded Berman by depriving him of his rights in his partnership interest and the true value thereof.

At a hearing on March 20, 1996, the court apparently elected to treat the motion for judgment on the pleadings as a demurrer to the first amended complaint and sustained the demurrer as to all causes of action with 20 days' leave to amend. At the hearing on the motion for leave to file the second amended complaint, on April 17, 1996, the court denied the motion without prejudice "based on language in paragraph 26. I agree that that's not the way to plead a claim. Sort of a contingent form of pleading, and you can't do it that way."

On May 6, 1996, Berman filed a motion for leave to file a third amended verified complaint. The proposed third amended complaint was substantially similar to the second amended complaint, except that it added a third cause of action against Spakor, Inc., and Bromberg for "constructive fraud— breach of fiduciary duty owed limited partner by general partner and president of limited partnership." The proposed third amended complaint also did not contain the language in paragraph 26 of the proposed second amended complaint relating to Berman's subjective intent not to sell his interest for $30,000. Rather, the third amended complaint, in paragraph 16 alleged that "Berman cashed the check on July 21, 1994. Said July 21, 1994, transaction constituted a 'sale' of a 'security' within the meaning of Cal. Corp. Code §§ 25401 and 25019, respectively." Paragraph 24, part of the first cause of action, also unequivocally alleged that a sale of a security occurred on July 21, 1994, when Berman cashed the $30,000 check.

In opposition to the motion for leave to file the third amended complaint, defendants maintained that because the allegations concerning the sale of a security contradict prior allegations that there was no sale of Berman's interest, the third amended complaint is a sham and the fatal defect cannot be cured by simply omitting the earlier allegations in a later pleading without explanation. The motion was heard and taken under submission on May 29, 1996; the court stated that it would rule on the matter at the status conference scheduled for May 30, 1996. On May 30, 1996, the status conference was held and continued to June 13, 1996; the court stated that it would issue a ruling on Berman's motion on June 13.

On June 13, 1996, the court denied Berman's motion for leave to file a third amended complaint, applying the "sham pleading rule" to the third amended complaint and reasoning as follows: "The policy against sham pleadings permits the court to take judicial notice of the prior pleading and require that the pleader explain the inconsistency. If he fails to do so, if he fails to give a satisfactory explanation, the court may disregard the omitted or inconsistent allegations and read into the complaint the allegations of the superseded complaint. . . . [¶] So, we go from version one, the original complaint, Berman didn't intend a sale, and he didn't agree to a sale. [¶] Version two, Berman didn't . . . agree with [a] sale. [¶] Version three, the proposed second amended complaint, he didn't intend a sale, but if he did, it was based on the untrue statements by defendants. [¶] And then version four, the third amended, Berman did sell his interests. And these are all verified complaints. So, I think the rule is definitely applicable here. The explanation given is that . . . these allegations were changed in response to the motion for judgment on the pleadings. So, I think this does fall within the rule. [¶] Now, I am going to disregard the statement in paragraph [24 of the third amended complaint], and I'm not going to allow the plaintiff to simply paper over the prior verified statements, because they are in conflict. And I do think this falls into the sham pleading rule. . . . So, I am going to deny the motion to amend."

Thereafter, judgment was entered in favor of defendants. Plaintiff filed timely notice of appeal from the judgment. Berman claims on appeal that the trial court erred in denying the motion for leave to file the third amended complaint because it cannot be characterized as a sham complaint within the meaning of that rule. He maintains that the allegations about his intent not to effect a sale merely constitute conclusions of law and are not material facts; his subjective intent is immaterial to the causes of action asserted in the third amended complaint; the material allegations of the third amended complaint are not inconsistent with those of the first amended complaint; and he did satisfactorily explain the pleading change by informing the court that he was acknowledging the correctness of Bromberg's legal position that the cashing of the check effected a sale of Berman's interest in the limited partnership as a matter of law. As more fully explained below, we agree with appellant that the "sham pleading" rule is inapplicable herein.

I

STANDARD OF REVIEW

■ "A complaint may plead inconsistent causes of action [citations], although it be verified, if there are no contradictory or antagonistic facts

[citation]." (*Steiner* v. *Rowley* (1950) 35 Cal.2d 713, 718-719 [221 P.2d 9].) Thus, "unless the alternate pleadings contain antagonistic statements, the statement of facts sufficient to constitute a cause of action in one count is not a bar to the maintenance of a separately stated count in the same pleading based upon inconsistent allegations." (*Id.* at p. 719.) "In the absence of inconsistent factual allegations any inconsistency between plaintiff's legal theories is immaterial." (*Thompson* v. *County of Fresno* (1963) 59 Cal.2d 686, 690 [31 Cal.Rptr. 44, 381 P.2d 924].) "The fact that a party has alleged more than is required to justify his right does not obligate him to prove more than is essential, and the unnecessary allegations will be treated as surplusage unless the opposing party would be prejudiced." (*Ibid.*)

■ "There is a policy of great liberality in permitting amendments to the pleadings at any stage of the proceeding. [Citations.] An application to amend a pleading is addressed to the trial judge's sound discretion. [Citation.] On appeal the trial court's ruling will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.] The burden is on the plaintiff to demonstrate that the trial court abused its discretion." (*Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081 [235 Cal.Rptr. 844].) " 'When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict "is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling." ' [Citation.] If the original pleading has not framed the issues in an articulate and precise manner, a plaintiff should not be precluded from having a trial on the merits." (*Honig* v. *Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965 [7 Cal.Rptr.2d 922].) "[I]t is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment. [Citation.] Here, the record does not support [defendant's] claim it has been harmed by the delay. Moreover, it is irrelevant that new legal theories are introduced as long as the proposed amendments 'relate to the same general set of facts.' " (*Kittredge Sports Co.* v. *Superior Court* (1989) 213 Cal.App.3d 1045, 1048 [261 Cal.Rptr. 857].) Thus, under this state's liberal rules of pleading, "the right of a party to amend to correct inadvertent misstatements of facts or erroneous allegations of terms cannot be denied." (*Blakey* v. *Superior Court* (1984) 153 Cal.App.3d 101, 107 [200 Cal.Rptr. 52].)

■ " 'Generally, after an amended pleading has been filed, courts will disregard the original pleading. [Citation.] [¶] However, an exception to this rule is found in *Lee* v. *Hensley* [(1951) 103 Cal.App.2d 697, 708-709 (230

P.2d 159)], where an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring them. The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham.' [Citation.] The rationale for this rule is obvious. 'A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.' [Citation.] Moreover, any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations." (*Vallejo Development Co.* v. *Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 [29 Cal.Rptr.2d 669].)

The foregoing rule "is intended to prevent sham pleadings omitting an incurable defect in the case. However, '[r]ules of pleading are conveniences to promote justice and not to impede or warp it. We do not question the rule that all allegations of fact in a verified complaint, which are subsequently omitted or contradicted, are still binding on the complainant. The rule is valid and useful, but it does not exist in a vacuum and cannot be mechanically applied. It is a good rule to defeat abuses of the privilege to amend and to discourage sham and untruthful pleadings. It is not a rule, however, which is intended to prevent honest complainants from correcting erroneous allegations of generic terms which may have legal implications but which are also loosely used by laymen or to prevent the correction of ambiguous statements of fact.'" (*Contreras* v. *Blue Cross of California* (1988) 199 Cal.App.3d 945, 950 [245 Cal.Rptr. 258].)

II

### Proposed Third Amended Complaint Is Not a Sham Pleading

In light of the foregoing principles, we find nothing in our record to indicate that the proposed third amended complaint is a sham pleading, or that the "omission, substitution, or contradiction of an original allegation carries with it the onus of untruthfulness." (*Avalon Painting Co.* v. *Alert Lbr. Co.* (1965) 234 Cal.App.2d 178, 184 [44 Cal.Rptr. 90].) The third amended complaint alleges different legal theories based on the same set of general facts as set out in the superseded pleadings and the prior allegations pertaining to Berman's lack of intent and lack of agreement to sell his partnership interest, even if true and even if read into the third amended complaint, are immaterial to the legal theories set out in the third amended complaint. Thus,

the prior allegations do not undermine or destroy the causes of action in the third amended complaint.[3]

In the prior complaints, Berman admitted cashing the July 18, 1994, check; however he alleged that he did not intend to, or agree to, a sale of his partnership interest. In the third amended complaint, Berman admitted cashing the July 18, 1994, check, and alleged essentially that Bromberg's letter and check of July 18, 1994, constituted an offer to buy, and Berman's cashing of the check constituted a sale of his partnership interest and the sale of a security within the meaning of Corporations Code sections 25401 and 25019. Respondents do not herein contend that the allegations of the third amended complaint are insufficient to state claims for violation of Corporations Code section 25401 and for breach of fiduciary duty or constructive fraud thereunder; rather, respondents maintain that the third amended complaint "was a sham designed to avoid the bar of the statute of limitations whether the fatally false contradictions are allegations of ultimate fact or are legal conclusions."[4]

As pointed out in appellant's brief, "[P]laintiff's omission of the allegations that he did not 'intend' or 'agree' to sell his partnership interest by cashing the check is immaterial to whether such a sale in fact occurred, and 'in no way changed the fundamental character of that transaction.'" (See

---

[3]It is important to note that defendants did not oppose the motion for leave to file the third amended complaint on the ground that, standing alone, the first two causes of action therein failed to state causes of action. The trial court also did not deny the motion for leave to amend on the ground that the third amended complaint, standing alone, failed to state a cause of action. Inasmuch as this issue was not decided below, we do not need to address that issue here. The only issue we address on this appeal is whether the trial court properly denied the motion for leave to amend on the ground that the third amended complaint was a "sham" pleading designed to untruthfully omit a fatal and incurable defect.

[4]Respondents failed to discuss below, and fail to discuss here, the applicable statute of limitations for the causes of action asserted in the third amended complaint. Rather, as we interpret respondents' briefs, respondents appear to be referring to the statute of limitations with respect to the claims asserted in the first amended complaint. Inasmuch as appellant expressly abandoned the legal theories asserted in the first amended complaint, we are not here concerned with whether or not those claims are barred by the statute of limitations. Moreover, a complaint is not "sham" merely because the plaintiff amends the pleading to assert a legal theory which is not barred by the statute of limitations. (See, e.g., *Blakey* v. *Superior Court, supra*, 153 Cal.App.3d at p. 107.) Respondents' brief does challenge the third cause of action for constructive fraud on the ground that it fails to allege all of the elements of common law fraud or fraud as defined in the Civil Code; however, it is clear from the pleading and appellant's briefs that appellant is relying upon a statutory cause of action under Corporations Code sections 25401 and 25501, which dispenses with the common law element of actual reliance. (*Boam* v. *Trident Financial Corp.* (1992) 6 Cal.App.4th 738, 743-744 [8 Cal.Rptr.2d 177].) Because the third amended complaint was not permitted to be filed, and because the trial court did not deny its filing on the ground that it failed to state a cause of action, we refrain from addressing the merits of the pleading here. Respondents will have an opportunity, upon remand, to demur or otherwise respond to the third amended complaint.

*Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 205 [300 P.2d 119].) ▮ This is so because "California recognizes the objective theory of contracts. (E.g., *Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 . . . ['It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.']. . . .)" (*ACL Technologies, Inc.* v. *Northbrook Property & Casualty Ins. Co.* (1993) 17 Cal.App.4th 1773, 1791, fn. 45 [22 Cal.Rptr.2d 206].)

Thus, ". . . evidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of contractual language." (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166, fn. 3 [6 Cal.Rptr.2d 554].) Rather, it is the outward manifestation or expression of assent that is controlling. (*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].) With respect to the interpretation of a written settlement agreement, one court has stated that "The true, subjective, but unexpressed intent of a party is immaterial and irrelevant." (*Vaillette* v. *Fireman's Fund Ins. Co.* (1993) 18 Cal.App.4th 680, 690 [23 Cal.Rptr.2d 807].)

▮ In other words, the fact that the prior pleadings in this case may have contained true, but irrelevant, matters does not render the proposed third amended complaint a sham; although the prior legal theories are abandoned in the third amended complaint, it is based on the same general set of underlying material facts. "As such, the [prior] allegations were more in the nature of evidentiary facts and not facts essential to plaintiffs' stated causes of action." (*Amarel* v. *Connell* (1988) 202 Cal.App.3d 137, 145 [248 Cal.Rptr. 276].) Thus, respondents failed below, and fail here, to establish how the prior allegations are destructive of any of the causes of action asserted in the proposed third amended complaint.

We also note that whether or not there was the sale of a security amounts to a conclusion of law which can be determined only after an evaluation of material evidence. The court in *Avalon Painting Co.* v. *Alert Lbr. Co., supra,* 234 Cal.App.2d 178, rejected a claim of sham pleading based on an amendment changing allegations that the parties had an agency relationship to an allegation that the parties were buyer and seller: "This is not a situation in which the omission, substitution, or contradiction of an original allegation carries with it the onus of untruthfulness. Indeed, the cases show that the determination of the existence of agency may be a complex and difficult task. A final conclusion can be reached on the decisive fact in question only after evidence has been taken. [¶] Taking both cross-complaints into consideration, . . . there is a probability that the relationship between respondent

and Synkoloid, the manufacturer, was one of buyer and seller, not principal and agent . . . ." (*Id.* at pp. 184-185.) The court in *Avalon* also pointed out that, like the instant case, the underlying factual allegations remained the same, with the pleader seeking only to draw a different legal conclusion from those facts. "In the case at bench we are dealing with an allegation of agency which amounts to a conclusion of law and is not only subject to differing constructions but it is one which in the original pleadings was coupled with an allegation that the party or parties in question were retailers and other facts indicating that Synkoloid, the original source, sold its products only through certain outlets." (*Id.* at p. 184.)

Inasmuch as it has been held that where there is a material factual dispute, it is improper to grant summary judgment based on mistaken legal conclusions in the complaint (*Kirby* v. *Albert D. Seeno Construction Co.* (1992) 11 Cal.App.4th 1059, 1068 [14 Cal.Rptr.2d 604]), we believe that the "sham pleading rule" should not be applied in a case, as here, where the plaintiff seeks to change his legal theory of recovery and the legal conclusions he seeks to draw from underlying factual events, and also seeks to omit factual allegations that are irrelevant and immaterial to the new legal theories asserted. As in *Amarel*, we perceive nothing devious or dishonest in the removal from the proposed third amended complaint of the language pertaining to Berman's subjective intent with respect to a sale of his partnership interest, and the proposed third amended complaint "does not carry with it 'the onus of untruthfulness' . . . , and the omission in it of the 'offending' allegations does not impugn the credibility of the causes of action stated . . . ." (*Amarel* v. *Connell, supra,* 202 Cal.App.3d at p. 145.) Accordingly, the sham pleading rule is inapplicable here, and there was no need for Berman to explain the reasons for the amended pleading because there were no inconsistencies in the underlying *material* or *relevant* factual allegations.

Two cases relied upon by the trial court, and cited by respondents, are easily distinguishable from the instant circumstances. In *Amid* v. *Hawthorne Community Medical Group, Inc.* (1989) 212 Cal.App.3d 1383 [261 Cal.Rptr. 240], and *Owens* v. *Kings Supermarket* (1988) 198 Cal.App.3d 379 [243 Cal.Rptr. 627], the subsequent changed allegations were clearly material to the issue of whether the plaintiff had a viable claim. In *Owens*, the plaintiff initially alleged that he was injured in the street adjacent to the defendants' market; after a demurrer was sustained on the ground that defendants owed no duty to plaintiff with respect to property they did not own, plaintiff added an allegation that the injury occurred on defendants' premises. (*Id.* at p. 384.)

In *Amid*, the court found that a "breach of contract" claim for disclosing a confidential report was a sham where plaintiff had numerous opportunities to

set out the express terms of the contract which plaintiff claimed were breached, but failed to do so, and instead upon demurrers by defendants, plaintiff offered various amendments in an attempt to state a breach of contract claim; plaintiff initially alleged there was a written employment contract modified by an oral agreement, then alleged the cause of action was based on breach of an implied covenant of good faith and fair dealing arising out of the parties' contractual relationship, and then finally alleged an explicit oral contract. The court found that "His cause of action, labelled 'breach of contract,' was not based upon any express term of nondisclosure, either written or oral. In four pleadings, he had alleged no such term. Instead, it was based upon an *implied* contract, covenants of good faith and fair dealing. [¶] . . . [¶] . . . [A]lmost two years after his initial complaint, having failed to allege an express nondisclosure term in four earlier complaints and having adopted a position in his prior complaint that there was no such express nondisclosure term, appellant alleged an explicit oral contract of nondisclosure." (212 Cal.App.3d at pp. 1389-1390.) The type of circumstances in *Amid* are not present here.

We also find without merit respondents' claim that there is an inconsistency between paragraphs 24 and 33 of the proposed third amended complaint in that paragraph 24 alleges a sale of a security on July 21, 1994, and paragraph 33 (part of the third cause of action for constructive fraud and breach of fiduciary duty) alleges that Berman and Bromberg were partners until March 21, 1995. We do not read paragraph 33 as alleging that the partnership relationship continued after the sale of Berman's interest; rather, paragraph 33 appears to be alleging facts to establish Berman's delayed discovery of his cause of action. Paragraph 33 reads in full: "Plaintiff placed confidence in and relied on defendant until on or about March 21, 1995, when plaintiff discovered defendants' acts committed in breach of their fiduciary duty. Until such date, plaintiff had reasonably relied on defendants in view of their relationship as partners under the partnership agreement."

We also find nothing inherently inconsistent in the allegation that, on the one hand, Berman is informed and believes that his partnership interest was worth more than $500,000 at the time of sale and, on the other hand, that he had received no financial books and records from the partnership and does not have information about "the past and ongoing business [of defendants] . . . and has demanded an accounting." Berman may be relying on information other than the partnership's financial books and records in alleging on information and belief the value of his partnership interest at the time of sale. In any event, respondents do not establish that reading one of these allegations into the complaint, and omitting the other, would be "destructive of the cause of action." (*Amarel* v. *Connell*, *supra*, 202 Cal.App.3d at p. 144.)

For all of the foregoing reasons, we conclude that the trial court erred and abused its discretion in applying the sham pleading rule to the proposed third amended complaint, and the trial court erred in denying the motion for leave to file the third amended complaint on that ground. Inasmuch as respondents fail to establish that they raised below any other ground which supports the trial court's ruling, we conclude that the ruling must be reversed.

### DISPOSITION

The judgment is reversed and on remand the trial court is directed to grant plaintiff's motion for leave to file the third amended complaint. Appellant is entitled to costs on appeal.

Johnson, J., and Woods, J., concurred.

A petition for a rehearing was denied August 12, 1997.