Filed 11/10/15  Kaufman v. Gordon CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| DANIEL A. KAUFMAN, | B258570 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. BC519956) |
| MONTE GORDON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Michael Johnson, Judge.  Affirmed.

Neufeld Mark and Paul S. Marks for Defendant and Appellant.

Law Offices of Robert W. Cohen and Robert W. Cohen for Plaintiff and Respondent.

_____

A defendant filed an anti-SLAPP (Code Civ. Proc., § 425.16) motion to strike based primarily on the theory that the operative complaint was a sham pleading which should be read to include allegations of a prior, superseded complaint. The trial court denied the motion on the basis that the operative complaint was not a sham. We agree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff and defendant are related. The plaintiff, Daniel Kaufman, is an artist. The defendant, his uncle Monte Gordon, is an art collector. The instant action is not the first litigation between the parties. In 2011, the collector's wife brought a conversion action against the artist alleging he refused to return to her a painting she had loaned to him (the painting). The artist brought a cross-complaint against the collector and his wife for libel, alleging that the collector and his wife made numerous statements to third parties falsely accusing him of theft and dishonesty. The collector's wife's conversion action was resolved in favor of the artist on statute of limitation grounds. Thereafter, the artist voluntarily dismissed his libel cross-complaint.

Less than a year later, the artist brought the instant action against the collector. The collector was sued both in his individual capacity and as surviving spouse of his wife.[1] The complaint alleged three causes of action: (1) malicious prosecution of the conversion action; (2) defamation in falsely accusing the artist (to "numerous" third parties) of theft and dishonesty; and (3) interference with economic relations, for interfering with the artist's relations with gallery owners by the alleged defamatory conduct. The cause of action for interference with economic relations appeared to pertain only to the artist's relationships that arose because he owned the painting; the artist alleged a loss of economic benefits which would have resulted from exhibiting the painting.

---

[1] Further references to prior conduct of "the collector" include his deceased wife.

2

The collector responded with an anti-SLAPP motion directed only to the first two causes of action. He argued that the malicious prosecution cause of action was subject to the anti-SLAPP law because it arose from litigation conduct, and the defamation cause of action was subject to the anti-SLAPP law because the alleged defamatory statements were made in connection with litigation (specifically, they related to the then-disputed issue of the ownership of the painting). The collector further argued that the artist would not be able to establish a probability of prevailing on either cause of action. The artist could not prevail on malicious prosecution as resolution of the conversion action on statute of limitation grounds does not constitute favorable termination on the merits. As to defamation, the collector argued that the defamation cause of action was time-barred and that the absolute litigation privilege applied.

The artist did not oppose the anti-SLAPP motion and voluntarily dismissed his malicious prosecution and defamation causes of action. The collector was ultimately awarded his attorney's fees for his successful pursuit of the anti-SLAPP motion.[2] (Code Civ. Proc., § 425.16, subd. (c)(1).)

Simultaneous to his pursuit of the anti-SLAPP motion, the collector also demurred to the interference with economic relations cause of action. He argued that the alleged defamatory statements that were the basis of the cause of action were subject to the absolute litigation privilege. The artist opposed the demurrer, arguing that the alleged interfering conduct was not limited to defamation and that, even if it were, the alleged defamatory statements were unrelated to any judicial proceeding and were therefore not privileged. In reply, the collector emphasized that the language of the complaint *specifically stated* that the alleged interference occurred "by means of the defamatory conduct" described in the defamation cause of action.

The trial court reviewed the complaint and concluded that the interference cause of action was based exclusively on the defamatory conduct alleged in the defamation cause of action. The court acknowledged the artist's argument that "not all of the defamatory

---

**2**     This ruling is not at issue in this appeal.

3

conduct is barred by the litigation privilege," but noted that the artist did not "allege facts that raise this distinction." The demurrer was sustained with leave to amend.

The artist filed a first amended complaint alleging only intentional interference with economic relations. This complaint broadened the scope of the economic relations with which it alleged the collector interfered. The *initial* complaint alleged that the collector had interfered with the artist's relationships arising from his ownership of the painting and had disrupted his ability to exhibit the painting. The *amended* complaint alleged that the collector had interfered with the artist's relationships arising out of his being an accomplished artist and his ownership of an entire collection of art. It alleged that the collector was an influential figure in the art world who "by means of [his] considerable power and influence in the art business industry, prevailed upon other gallery owners and museum curators to shun [the artist] and to discontinue their business relations with him." As a result of this interference, the artist alleged the loss of agreements to have his collection, and his own artwork, exhibited.

The collector responded with an anti-SLAPP motion. The collector argued that the artist's allegations of intentional interference were merely "the vaguest rhetorical assertions of unspecified wrongdoing which allegations constitute legal conclusions, not well-pled facts." The collector believed that the artist's allegations were purposefully vague, because the artist knew he could allege no specific conduct other than the defamatory acts alleged in his original complaint. Arguing that the doctrine of sham pleading required the court to consider the allegations of the prior complaint, the collector argued that the anti-SLAPP statute applied to those allegations, mandating that the complaint be stricken.

In opposition, the artist argued that he had been granted leave to amend in order to allege facts other than the defamatory accusations of theft of the painting, and he did exactly that. The artist sought sanctions for pursuit of a frivolous anti-SLAPP motion.

The trial court denied the anti-SLAPP motion. The court concluded that the artist had expanded his allegations to "broadly allege[] that [the collector] 'set out to disrupt and sever' [the artist's] business relations by convincing others 'to shun [the artist] and to

4

discontinue their business relations with him.'  None of this has anything to do with protected activity."  The court rejected the collector's assertion that the operative complaint was a sham pleading; instead, the amended complaint properly alleged *additional* conduct to that upon which the original complaint had relied.  However, the court denied sanctions, concluding that the collector's arguments, although unmeritorious, were not frivolous.

Defendant answered the first amended complaint.  Several months later, he filed a timely notice of appeal.

## DISCUSSION

1.    *Standard of Review*

The Legislature enacted the anti-SLAPP law in order to address the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."  (Code Civ. Proc., § 425.16, subd. (a).)  To that end, the statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (Code Civ. Proc., § 425.16, subd. (b)(1).)

"Thus, there is a two-step process for evaluating an anti-SLAPP motion.  ' "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  [Citation.]  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the

5

claim." [Citation.]' [Citation.] 'On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step. [Citation.]' [Citation.]" (*People ex rel. Fire Insurance Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822 (*Anapol*).)

We are here concerned with the first step. In that analysis, the court reviews the parties' pleadings, declarations and other supporting documents to determine what conduct is being challenged. The court then decides whether the claims arise from protected activity.[3] (*Anapol, supra,* 211 Cal.App.4th at p. 822.)

2.      *Facial Analysis*

In this case, there are no declarations or other supporting documents at issue. We therefore turn to the language of the operative pleading itself. On its face, there is nothing in the first amended complaint to indicate that it is based on protected conduct of the collector. The pleading alleges that the collector used his influence to "prevail[] upon" others to stop dealing with the artist. Such activity does not constitute petitioning activity, nor does it constitute speech on a public issue.[4] As such, the collector has failed

---

[3]     The collector suggests that the trial court misunderstood his argument; as our review is de novo, the trial court's understanding is not relevant to our analysis.

[4]     On appeal, the collector suggests that *any* acts of speech (and, more specifically, any acts of defamation) implicate the First Amendment and, therefore, are acts of protected activity. But the issue is not whether the First Amendment is implicated by the charged conduct, but whether the conduct is an act "in furtherance of [the defendant's] right of petition or free speech under the United States Constitution or the California Constitution *in connection with a public issue.*" (Code Civ. Proc., § 425.16, subd. (b)(1), italics added.) Subdivision (e) of the anti-SLAPP statute defines such conduct to include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in

to meet his burden of showing the complaint implicates protected activity, unless he can succeed in his argument that the allegations of the prior complaint must be read into the current complaint.

3.      *The Operative Complaint is Not a Sham Pleading*

Generally, an amended pleading supersedes the original pleading, and the allegations of the original pleading are disregarded.  (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.)  However, when an amended complaint attempts to avoid defects in a prior complaint by ignoring them, the trial court may examine the prior complaint to determine whether the amended complaint is merely a sham.  Any inconsistencies with prior pleadings must be explained; and, if they are not, the trial court may disregard the inconsistent allegations.  (*Id*. at p. 946.)  The sham pleading doctrine is not intended to prevent honest corrections of erroneous allegations or ambiguous facts; it is intended to enable courts to prevent an abuse of process.  (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 344.)

The collector argues that the amended pleading is a sham pleading because it fails to specifically allege the facts constituting the alleged intentional interference with economic relations; and, without such specific facts, the court should consider the specific facts alleged in the prior complaint.  In other words, the collector takes the position that the prior complaint contained *the only specific allegations the artist could make*, and that the artist's first amended complaint was drafted in general terms because there were no other specific allegations of misconduct available.  The conclusion does not follow.  The first complaint alleged that the collector interfered with the artist's ability to exhibit *one particular painting* by falsely telling galleries that the artist had stolen that painting.  The current complaint alleges that the collector interfered with the artist's

furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  Telling a gallery owner not to do business with an artist does not fall within any of these categories, unless a public issue or an issue of public interest is implicated.

7

ability to exhibit *his collection* and *his own art* by using his influence to prevail upon gallery owners to stop dealing with him. This is a completely different set of facts, and there is no abuse of process in the artist's attempt to pursue a cause of action based on those facts.

As the amended complaint is not a sham pleading, the allegations of the initial complaint are not read into it, and the collector has not established that the complaint is based on protected conduct. The anti-SLAPP motion was therefore properly denied, and there is no need to consider whether the artist has a probability of prevailing.

4.      *The Viability of the Complaint is Not Before This Court*

The collector's argument that the operative complaint is a sham pleading incorporates an argument that the artist did not properly allege a cause of action for intentional interference with economic relations. Specifically, courts require that the act of interference itself constitute independently actionable conduct. In other words, "the alleged interference must have been wrongful by some measure beyond the fact of the interference itself." (*Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1402.) The act must be unlawful, under some constitutional, statutory, regulatory, common law, or other determinable legal standard. (*Ibid.*) The collector argues that the allegations of defamation from the original complaint must be read into the amended complaint because, without such allegations, the general allegations of interference in the amended complaint do not sufficiently allege an independently wrongful act.

But whether the amended complaint sufficiently alleged an independently wrongful act is not a matter to be determined on an anti-SLAPP motion to strike. If the collector believed the complaint was insufficient to state a cause of action or uncertain, his remedy was to file a demurrer. (Code Civ. Proc., § 430.10; cf. *Allerton v. King* (1929) 96 Cal.App. 230, 234 [a motion to strike cannot take the place of a demurrer].) He did not do so. Therefore, the trial court did not rule on the legal sufficiency of the complaint, and that issue is not before this court.

8

5.      *The Artist is Not Entitled to Attorney's Fees*

On appeal, the artist seeks his attorney's fees.  Attorney's fees are recoverable by a plaintiff who successfully defeats an anti-SLAPP motion only when the anti-SLAPP motion was frivolous or was solely intended to cause unnecessary delay.  (Code Civ. Proc., § 425.16, subd. (c)(1).)  The trial court concluded the collector's motion was not frivolous and we agree.  The artist suggests the appeal was solely intended to delay trial, based in large part on the fact that the collector waited several months before filing his notice of appeal.  This is an insufficient showing to justify sanctions.

## DISPOSITION

The order denying the collector's anti-SLAPP motion is affirmed.  The collector shall pay the artist's costs on appeal.


                                                            RUBIN, J.
WE CONCUR:



        BIGELOW, P. J.



        GRIMES, J.