Filed 3/24/17

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----


| | |
|---|---|
| MUHAMMAD IQBAL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>IMRAN ZIADEH,<br><br>    Defendant and Respondent. | C075203<br><br>(Super. Ct. No. 39-2012-00284517-CU-PO-STK) |


APPEAL from a judgment of the Superior Court of San Joaquin County, Bobby W. McNatt, Judge. Reversed with directions.

Sodhi Law Group, Jakrun S. Sodhi and Ameet S. Birring; Arata, Swingle, Sodhi & Van Egmond, Bradley J. Swingle and Colleen F. Van Egmond for Plaintiff and Appellant.

Hayes, Scott, Bonino, Ellingson & McLay, Mark G. Bonino, Stephen P. Ellingson, Dara M. Tang, and Tara S. Nayak; Gregory J. Goodwin for Defendant and Respondent.

Plaintiff Muhammad Iqbal appeals from a summary judgment entered against his complaint for personal injuries.  The trial court ruled the complaint was barred by a general release plaintiff had previously executed that immunized "affiliates" of the defendants in the former case, and defendant Imran Ziadeh was such an affiliate.  We conclude as a matter of law defendant was not a protected "affiliate," as that term is commonly understood.  We reverse.

FACTS AND PROCEDURAL HISTORY

In 2011, plaintiff sued Yosemite Auto Sales, Inc. (Yosemite Auto), its owner Eyad Kaid, and Alla Abuziadeh, individually and doing business as Jimmy's Tow (collectively, the former defendants), for personal injuries.  He alleged Yosemite Auto retained him to determine why a vehicle it owned would not start.  Unknown to plaintiff, Abuziadeh earlier towed the vehicle to Yosemite Auto and disconnected the transmission shift linkage to do so.  He allegedly did not reconnect the shift linkage after towing the car.

Plaintiff alleged he confirmed the vehicle was in "park," and he went underneath it to determine why it would not start.  When he tested the electrical connection to the starter, the vehicle immediately ran over him and dragged him through Yosemite Auto's parking lot.  Plaintiff's spine was crushed.

Plaintiff and the former defendants reached a settlement.  Kaid and Yosemite Auto tendered their insurance policy limit of $1,000,000.  Plaintiff dismissed the action with prejudice as to Yosemite Auto and Kaid and released all former defendants from liability "including, without limitation, any and all known or unknown claims . . . ."  Of significance here, the release included within its scope the former defendants' "affiliates" and "all other persons, firms, or corporations, with whom any of the former have been, are now or may hereafter be affiliated."

In 2012, and more than three months after he settled the first action, plaintiff brought this action against defendant Imran Ziadeh.  At the time of the accident, Kaid and Yosemite Auto leased the land for their business from defendant Ziadeh.  Defendant had

2

previously operated a used car dealership on the property. Upon leasing the property to Kaid and Yosemite Auto, defendant entered into an agreement with Yosemite Auto under which he left several vehicles from his used car dealership on the property on a consignment basis for Yosemite Auto to sell. The vehicle that injured plaintiff was one of those vehicles. Defendant was the person who recommended plaintiff to Yosemite Auto to fix that vehicle. Plaintiff based this action on the same facts as his first action, and he sued defendant for negligence and premises liability.

Defendant filed a motion for summary judgment. He claimed he was an "affiliate" of Yosemite Auto for purposes of the release in the first action's settlement agreement, and thus he could not be held liable for any claim arising out of the accident. He submitted extrinsic evidence to support his interpretation of the release. That evidence consisted in pertinent part of a declaration by defendant's counsel who also represented Yosemite Auto in the first action. Counsel stated he intended the release in the first action's settlement agreement to be a general release applicable to all persons, known and unknown, who were associated in any manner with the accident, including defendant.

Plaintiff opposed the motion for summary judgment. He contended the release was ambiguous and there were disputed issues of material fact regarding the release's intent. He submitted extrinsic evidence to establish the parties to the release did not intend for it to apply to defendant because defendant was never a contemplated or known party. Plaintiff's counsel stated he was never aware of defendant's potential liability or that defendant and Yosemite Auto "were affiliated" because Yosemite Auto never disclosed the relationship during discovery in the first action. Nor did Yosemite Auto or its insurer disclose that defendant maintained a $1,000,000 insurance policy with the same insurer who insured Yosemite Auto. Counsel also submitted copies of correspondence between him and counsel representing the former defendants showing no one expressly mentioned or considered defendant during the negotiations over the release.

3

The trial court granted defendant's motion for summary judgment, concluding defendant was an affiliate for purposes of the release as a matter of law. The court stated: "To me, the analysis begins and ends with whether or not [defendant] has produced evidence showing that he is an affiliate of or affiliated with the business that has already sued or been sued and tendered policy limits. [¶] Under that declaration, it appears that [defendant] owns the property at 777 East Yosemite Avenue, and pursuant to a lease agreement, Yosemite Auto Sales conducts its business on that property. [¶] He entered into an agreement. [Defendant] entered into the agreement with [Yosemite Auto] whereby his dealership consigned several vehicles to [Yosemite Auto] to sell. [¶] As such, I think that within the clear definition of 'affiliate' found in any dictionary, he was included or contemplated within the language of the release."

## DISCUSSION

Plaintiff contends the trial court erred in granting summary judgment. He argues (1) the extrinsic evidence he submitted established a disputed issue of material fact regarding the meaning of the words "affiliates" and "affiliated" as used in the release; (2) the court erred in admitting defendant's extrinsic evidence; and (3) the court erred in concluding as a matter of law that defendant was a third party beneficiary of, and immunized by, the release.

We conclude the undisputed evidence demonstrates defendant was not Yosemite Auto's "affiliate," as that term is commonly understood, and thus was not immunized from liability by the release in the first action.

I

*Standard of Review*

A trial court will grant summary judgment where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. A defendant moving for summary judgment must prove the action has no merit. He does this by showing plaintiff cannot establish one or more elements of his cause of action or

4

that there is a complete defense to the cause of action.  Plaintiff then bears the burden of showing a triable issue of material fact exists as to that cause of action or defense.  (Code Civ. Proc., § 437c, subds. (c), (o)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 849-850.)

On appeal, we exercise our independent judgment.  (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 37.)  In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained.  (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  We resolve evidentiary conflicts, doubts, or ambiguities in the opposing party's favor.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

II

*Interpretation of the Release*

At issue is whether plaintiff and the former defendants intended the release to immunize defendant, a third party, against liability arising from the accident as an affiliate of Yosemite Auto.  We conclude as a matter of law they did not.  Defendant was not an affiliate of Yosemite Auto as he had no type of ownership, fiduciary, agency, or dependent relationship to the former defendants.  Plaintiff and the former defendants did not intend the release to protect defendant.

"Under subdivision (a) of section 877 of the Code of Civil Procedure, a release given in good faith to a tortfeasor 'shall not discharge any other such party from liability unless its terms so provide . . . .'  In determining whether the 'terms so provide' (*ibid.*), we apply the same rules that govern any other contract.  (See Civ. Code, § 1635 ['All contracts . . . are to be interpreted by the same rules, except as otherwise provided by this Code']; see also *Neverkovec v. Fredericks* (1999) 74 Cal.App.4th 337, 348 (*Neverkovec*); *Appleton v. Waessil* (1994) 27 Cal.App.4th 551, 554.)

5

"A third party beneficiary may enforce a contract made for its benefit. (Civ. Code, § 1559.) However, '[a] putative third party's rights under a contract are predicated upon the contracting parties' intent to benefit' it. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 436 [].) Ascertaining this intent is a question of ordinary contract interpretation. (*Ibid.*) Thus, '[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement.' (*Neverkovec, supra,* 74 Cal.App.4th at p. 348.)

"Under long-standing contract law, a 'contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, § 1636.) Although 'the intention of the parties is to be ascertained from the writing alone, if possible' (*id.,* § 1639), '[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates' (*id.,* § 1647). 'However broad may be the terms of a contract, it extends only to those things . . . which it appears that the parties intended to contract.' (*Id.,* § 1648.)" (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 524 [].)

"Extrinsic evidence is admissible to prove a meaning to which the contract is reasonably susceptible. (*Powers v. Dickson, Carlson & Campillo* (1997) 54 Cal.App.4th 1102, 1111; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165.) If the trial court decides, after receiving the extrinsic evidence, the language of the contract is reasonably susceptible to the interpretation urged, the evidence is admitted to aid in interpreting the contract. (*Powers v. Dickson, Carlson & Campillo, supra,* 54 Cal.App.4th 1102, 1111; *Appleton v. Waessil*[, *supra,*] 27 Cal.App.4th 551, 554; *Winet v. Price, supra,* 4 Cal.App.4th 1159, 1165.) Thus, '[t]he test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' (*Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37.)

6

"The threshold issue of whether to admit the extrinsic evidence—that is, whether the contract is reasonably susceptible to the interpretation urged—is a question of law subject to de novo review. (*Appleton v. Waessil, supra,* 27 Cal.App.4th 551, 554-555; *Winet v. Price, supra,* 4 Cal.App.4th 1159, 1165-1166.)

"The ultimate construction placed on the contract might call for different standards of review. When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Winet v. Price, supra,* 4 Cal.App.4th at p. 1166.) When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction [following a trial] will be upheld if it is supported by substantial evidence. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632; *Winet v. Price, supra,* 4 Cal.App.4th at p. 1166.)

"California recognizes the objective theory of contracts (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 948), under which '[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation' (*Titan Group, Inc. v. Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127). The parties' undisclosed intent or understanding is irrelevant to contract interpretation. (*Winograd v. American Broadcasting Co., supra,* 68 Cal.App.4th at p. 632; *Berman v. Bromberg, supra*, 56 Cal.App.4th at p. 948.)" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956.)

With these principles in mind, we turn first to the language of the release. It states in pertinent part: "Plaintiff hereby completely releases and forever discharges the [former] Defendants from any and all past, present or future claims . . . of any damages . . . of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be

7

acquired, on account of, or in any way grow out of the [accident] . . . including, without limitation, any and all known or unknown claims for bodily and personal injuries to the Plaintiff . . . which have resulted or may result from the alleged acts or omissions of the [former] Defendants.  [¶]  . . . This release and discharge shall inure to the benefit of [the former] Defendants' present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, *affiliates*, partners, predecessors and successors in interest, and assigns and all other persons, firms, or corporations, with whom any of the former have been, are now or may hereafter be *affiliated*."  (Italics added.)

Defendant is protected against liability under this release only if plaintiff and the former defendants intended to consider him as one of the parties' affiliates or as a person with whom any of the signing parties' officers, directors, etc., were affiliated.  Defendant argues the terms "affiliates" and "affiliated" are not ambiguous and the trial court correctly found he was an affiliate of Yosemite Auto.  Without citing to any authority, he asserts an affiliate is "one who is in close association or connection with another" or "in legal or factual association or affiliation with" another.  He contends the undisputed evidence demonstrated he was an affiliate of or affiliated with Yosemite Auto because he leased property to Yosemite Auto and because Yosemite Auto agreed to sell his cars on consignment.

We agree the term "affiliate" is unambiguous, but we disagree with defendant and the trial court's interpretation of the term.  The word refers to a relationship that is closer than a mere arm's length contractual relationship.  The ordinary and usual meaning of the noun "affiliate" is "an affiliated person or organization."  (Merriam-Webster's Collegiate Dict. (11th ed. 2003) p. 21, col. 2.)  The adjective "affiliated" means "closely associated with another *typically in a dependent or subordinate position* <the university and its ~ medical school>."  (*Ibid*., italics added.)

8

Other sources note an affiliate is one who has a dependent relationship with another. Black's Law Dictionary defines an "affiliate" outside of the securities context as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." (Black's Law Dict. (10th ed. 2014) p. 69, col. 2.)

The online Oxford English Dictionary defines the *noun* "affiliate" as "[a] person or organization that is affiliated with a larger body; a member. Also: an associate of another person or organization; a fellow member of a larger body." (<http://www.oed.com/view/Entry/3402?rskey=015u3H&result=1#eid> [as of Mar. 24, 2017].) It defines "affiliated" as being "connected with a larger or more established body, often as a branch or subsidiary part; that is associated with a main or major group; that is an affiliate or member." (<http://www.oed.com/view/Entry/3404?redirectedFrom=affiliated#eid> [as of Mar. 24, 2017].)

The online Oxford English Dictionary defines the *verb* "affiliate" in similar ways: "To be connected with a larger or more established organization, as a branch or subsidiary part; to adhere or belong to an organization or group; to be a member or affiliate of a certain body. Also more generally: to be a part of something. . . . [¶] To join or unite with an organization or group; *esp.* to connect or align oneself with a larger or more established group of people; to attach oneself to an organization as a branch, subsidiary part, or affiliate. . . . [¶] To connect or align (a group, institution, etc.) with another body, typically one that is larger or more established; to cause to become a branch, subsidiary part, or affiliate of such a body. Also: to cause (an individual) to be a member or part of any group or organization." (<http://www.oed.com/view/Entry/3403?rskey=hTBCF1&result=2#eid> [as of Mar. 24, 2017].)

9

These sources indicate the common meaning of an affiliate generally is one who is dependent upon, subordinate to, an agent of, or part of a larger or more established organization or group. This is a closer association than that of defendant's, who had only a contractual relationship with Yosemite Auto. There is no evidence those contracts, a lease and a consignment agreement, made defendant dependent upon, under the control of, an agent of, or a part of Yosemite Auto.

Our attempt to define "affiliate" does not end here. " '[T]he character of a contract is not to be determined by isolating any single clause or group of clauses . . . .' (*Transportation Guarantee Co. v. Jellins* (1946) 29 Cal.2d 242, 247-248.) On the contrary, '[a] contract is to be construed as a whole, "so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." ' (*McCaskey v. California State Auto. Assn.* (2010) 189 Cal.App.4th 947, 970, quoting Civ. Code, § 1641; see *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027, 1029; *Lemm v. Stillwater Land & Cattle Co.* (1933) 217 Cal. 474, 480 ['Although the language of the contract must govern its interpretation (Civ. Code, [§§] 1638, 1639), nevertheless the meaning is to be obtained from the entire contract, and not from any one or more isolated portions thereof.'].)" (*Epic Communications, Inc. v. Richwave Technology, Inc.* (2015) 237 Cal.App.4th 1342, 1349.)

Other provisions in the settlement agreement reinforce our interpretation of "affiliate" as the interpretation plaintiff and the former defendants intended. First, the release extends primarily to persons or entities who are owners, fiduciaries, employees, or agents of the former defendants. The release benefits the former defendants' "present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms, or corporations, with whom any of the former have been, are now or may hereafter be affiliated." To interpret "affiliate" as meaning one who has only a contractual relationship with the former defendants is inconsistent with

10

the intent demonstrated by the remainder of the release. We are to avoid interpretations that create such inconsistencies. "Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected." (Civ. Code, § 1653.)

Second, plaintiff and the former defendants agreed to keep the settlement terms confidential. They agreed neither they nor their attorneys or representatives would reveal "to anyone" any terms of the settlement agreement, including the release, unless otherwise mutually agreed in writing. "The contracting parties could hardly expect that persons thus barred from knowledge of the agreement . . . would be able to take advantage of the release, or any other provision of the agreement. One cannot enforce a contract of which one is ignorant, and if the contracting parties have deliberately undertaken to hold their agreement in confidence, they cannot be supposed to have meant to confer enforcement powers on those thus deliberately kept in the dark. That contracting parties have bound themselves not to disclose their contract to third persons is strong evidence that they intended not to invest such persons with rights under it." (*Epic Communications, Inc. v. Richwave Technology, Inc., supra,* 237 Cal.App.4th at pp. 1352-1353.)

The objective evidence before us thus demonstrates plaintiff and the former defendants did not intend for defendant to be protected under the release. Defendant was not an affiliate of Yosemite Auto as that term is commonly understood. Plaintiff and the former defendants intended the release to apply only to those who had some type of ownership, fiduciary, agency, or dependent relationship to the former defendants, and defendant had no such relationship. Indeed, the parties intended that defendant and other third parties would never know of the release, and thus would not be in a position to enforce it.

We normally would turn to the extrinsic evidence defendant submitted to the trial court to see if the release is susceptible to the interpretation he asserts. Defendant's

11

evidence of intent, however, consisted only of a declaration by his attorney, submitted in support of the summary judgment motion, that when he, as counsel for the former defendants, drafted the release, he intended it to apply to any persons, known and unknown, including defendant. There is no evidence counsel expressed this intention to anyone. Counsel's undisclosed, subjective intent is irrelevant to interpreting the release's language objectively. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc., supra,* 109 Cal.App.4th at p. 956.)

For additional support of his position, defendant points to plaintiff's express acknowledgment in the settlement agreement that the release was a general release, and to plaintiff's express waiver of his rights against a general release granted him under Civil Code section 1542. But these general provisions do not take precedence over the specific provisions of the release, which limited its scope to certain enumerated classes of persons, of which defendant was not one. Where general and specific provisions are inconsistent, the specific provision controls. (Code of Civil Procedure, § 1859; *Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1235.)

Plaintiff also submitted extrinsic evidence, and it does not conflict with our interpretation of the release. The most relevant of this evidence consists of correspondence between his attorney and the former defendants' attorney as they negotiated the terms of the settlement agreement. Nowhere in this correspondence did either counsel suggest or indicate the release would apply to persons other than the negotiating parties or those groups of persons specified in the release.

In addition, plaintiff sent a copy of the complaint in this action to defendant's insurance carrier notifying it of the complaint and the allegations against defendant. In response, the insurer stated the complaint was "the first notice to [it] of a potential claim

against [defendant]." This evidence does not conflict with the common meaning of the term "affiliate." Rather, it suggests the parties did not intend to immunize defendant.[1]

Because there is no conflict in the admissible extrinsic evidence, we interpret the release as a matter of law. Defendant was not an affiliate of the former defendants for purposes of the release agreement, and thus summary judgment should not have been granted in his favor. Because this finding resolves the appeal, we do not address the parties other arguments.[2]

---

[1] Plaintiff relies on his extrinsic evidence to argue the release extends *only* to the former defendants. If we had to address that evidence in order to determine whether the settlement agreement was ambiguous, we would conclude the evidence is inconsistent with the terms of the release and thus inadmissible. By its express terms, the release applies to more persons than just the former defendants. (See *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 343.) However, because we have given the term "affiliate" its common meaning, and that meaning favors plaintiff, we need not address his contention.

[2] The parties disagree on the standard of proof defendant would have to meet to establish he was an intended third party beneficiary of the release. Plaintiff relies on *Neverkovec, supra,* 74 Cal.App.4th 337, which held a third party could not rely solely on a literal interpretation of the contractual language to prove he was an intended third party beneficiary. (*Id*. at p. 348.) Defendant relies on *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, which held if the requisite intent to make someone a third party beneficiary appears unambiguously from the face of the contract, the third party makes a prima facie showing of entitlement merely by proving the contract where the opposing party introduces no evidence to establish the contract is ambiguous. (*Id*. at p. 1023; see *Epic Communications, Inc. v. Richwave Technology, Inc., supra,* 237 Cal.App.4th at p, 1349.) In *Cline v. Homuth* (2015) 235 Cal.App.4th 699, 706-710, our court reviewed the divergent paths appellate courts have used to resolve third party enforcement of general releases. However, under the circumstances of that case, we were not required to take sides in the dispute, as the parties had offered additional evidence of intent at trial. (*Id*. at p. 710.) In this case, we once again need not weigh in on the issue, as the language of the release was unambiguous and no party introduced admissible extrinsic evidence suggesting otherwise.

13

DISPOSITION

The summary judgment is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to plaintiff. (Cal. Rules of Court, rule 8.278(a).)

      NICHOLSON    , J.

We concur:

      BLEASE    , Acting P. J.

      HULL    , J.

14