Filed 10/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA UNION SQUARE L.P., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> SAKS & COMPANY LLC, <br><br> Defendant and Appellant. | A162043 <br><br> (City and County of San Francisco Super. Ct. No. CR946553) |

Appellant Saks & Company LLC ("Saks") appeals from an order denying its motion for attorneys' fees.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The background of this case is discussed in our prior opinion, *California Union Square L.P. v. Saks & Co. LLC* (2020) 50 Cal.App.5th 340 ("*Union Square I*"), and we will summarize it to the extent relevant to the attorneys' fees issue in this appeal.

California Union Square L.P. ("Union Square") owns a 131,000-square foot building located on the corner of Post Street and Powell Street in San Francisco (the "Property").  Saks has operated a department store at the Property since 1991, when Saks and Union Square's predecessor entered into the lease central to this dispute.  The lease is over 100 pages long and consists of 24 Articles, most of which contain various sections and subsections.  The lease provided Saks an initial 25-year lease period followed by five successive options to renew for 10-year periods.

1

Article III of the lease, which is entitled "Rent," includes Section 3.1, which is entitled "Base Rent." sets forth the rent for the initial lease period, and Section 3(b) describes the process for determining the rent for any renewal period. For each renewal period, Section 3(b) requires the base rent be reset to "Fair Market Rent," which means "the open market rental value of the [Property] for first-class retail use compatible with the then current standard in Union Square taking into account the size of the [Property]." If the parties are unable to agree to the Fair Market Rent, Section 3(b) states that the "Fair Market Rent shall be determined by arbitration in accordance with the provisions of Section 3.1(c)."

Section 3.1(c) sets forth the process for settling disputes about the Fair Market Rent. This subsection mandates an arbitration process which is to be conducted under the rules of the American Arbitration Association ("AAA"). It subjects this process to several modifications enumerated in Sections 3.1(c)(i) through 3.1(c)(v). Section 3(c)(i) requires Saks to make a demand for arbitration along with its proposed determination of the Fair Market Rent, and Union Square must respond with its own rent determination. If the parties' positions continue to differ, Section 3.1(c)(ii) specifies the qualifications required for the arbitrator. Section 3.1(c)(iii) provides for what is known as "baseball arbitration," in which each party proposes its own rent determination and the arbitrator "select[s] which of the two determinations proposed . . . most closely approximate[s] [the arbitrator's] determination [of rent]." Section 3.1(c)(iv) states that the process for appointing a successor arbitrator in the event the original appointee fails to act is the same as for the original appointment. Critically for this appeal, it also states that "[e]ach party shall share equally the fees and expenses of the arbitrator. The attorneys' fees and expenses of counsel for the respective parties and of

2

witnesses shall be paid by the respective party engaging such counsel or calling such witnesses." Section 3.1(c)(v) establishes how the arbitrator must conduct the arbitration.

Article XXIII of the lease contains a series of "Miscellaneous" provisions, which includes one for "Attorneys' Fees." This provision, which appears as Section 23.10, states in relevant part: "Should either party institute any action or proceeding to enforce this Lease or any provision hereof, or for damages by reason of any alleged breach of this Lease or of any provision hereof, or for a declaration of rights hereunder, the prevailing party in any such action or proceeding shall be entitled to receive from the other party all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party in connection with such action or proceeding."

In January 2016, Saks exercised its option to renew the lease for ten years. The parties were unable to agree on the Fair Market Rent, which triggered the dispute resolution process under Section 3.1(c).

In June 2016, the parties received from AAA a list of ten proposed arbitrators. While the parties' arbitrator selection discussions were pending, Union Square filed a petition to appoint an arbitrator in federal district court. According to Saks' counsel, Union Square's attorney said the filing was " 'in the event we can't reach agreement on an arbitrator.' " Days later, Union Square also filed in the federal court case an ex parte application for an order requiring the parties each submit a list of five appraisers to serve as arbitrator, to which Saks responded. Prior to any ruling in the federal district court case, the parties mutually agreed on Jan Kleczewski as the arbitrator.

The parties proceeded to arbitrate the rent dispute to Kleczewski in January 2017. Following a three-day arbitration hearing, Kleczewski issued

his award in favor of Union Square (referred to as the "First Award"). He estimated the Fair Market Rent to be $10.94-10.98 million per year, which was closer to Union Square's proposed rent of $13.9 million than to Saks' proposed $6.25 million. Thus, under the principles of "baseball arbitration," the annual rent for the new lease term would be $13.9 million.

Union Square moved to confirm the First Award in an action it commenced in San Francisco Superior Court, and Saks moved to vacate it. The trial court granted Saks' motion to vacate the First Award and denied Union Square's motion to confirm it. The trial court found the arbitrator had exceeded his powers and ordered a new arbitrator be appointed and the matter re-arbitrated. In an effort to avoid re-arbitration, Union Square filed a petition for a writ of mandate in this court seeking an order directing the trial court to confirm the First Award. After inviting full briefing, this court summarily denied the petition.

After this court denied the writ, the parties began discussing a new arbitrator for a second arbitration. While these discussions were pending, Union Square filed in the superior court a motion to appoint the second arbitrator. After full briefing and oral argument, the court appointed Paula Konikoff. In late October/early November 2018, the parties participated in a four-day arbitration hearing before Konikoff. Konikoff found in favor of Saks and ruled that the $6.25 million annual rent proposed by Saks was the Fair Market Rent (the "Second Award"). Union Square moved to vacate the Second Award. After full briefing and a hearing on the motion, the trial court denied the motion. Saks subsequently filed an ex parte application to confirm the Second Award. The court granted the application and entered judgment in favor of Saks in June 2019.

Union Square appealed the judgment and the earlier order vacating the First Award. Following briefing and oral argument, we affirmed the trial court's order vacating the First Award as well as the order confirming the Second Award. (*Union Square I*, *supra*, 50 Cal.App.5th at p. 356.) Union Square filed a petition for review with the California Supreme Court, which Saks answered and the Supreme Court denied in August 2020.

Saks moved for approximately $1 million in attorneys' fees for various "litigation proceedings arising out of the arbitration." Saks expressly noted that it was not seeking any of the "hundreds of thousands of dollars" in attorneys' fees or costs incurred in the two arbitrations in light of Section 3.1(c)(iv)'s provision that "attorneys' fees and expenses" of counsel for the respective parties and witnesses "shall be paid by the respective party engaging such counsel or calling such witnesses." Under the attorneys' fees provision in Section 23.10, Saks sought the fees it incurred "only in *court* proceedings," which included the judicial proceedings in both federal and superior court beginning with Union Square's federal court action to appoint an arbitrator and concluding with its motion for attorneys' fees.

Following full briefing and a hearing, the trial court denied Saks' motion for attorneys' fees. Saks appeals.

## DISCUSSION

Saks contends the trial court erroneously denied its motion for attorneys' fees. We disagree.

Attorneys' fees are generally not recoverable as costs unless they are authorized by statute or agreement. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 127.). We interpret a contract so as to give effect to the mutual intention of the contracting parties at the time the contract was formed. (Civ. Code, § 1636; see *Foster-Gardner, Inc. v. National Union Fire*

5

*Ins. Co.* (1998) 18 Cal.4th 857, 868.) We ascertain that intention solely from the written contract if possible, but also consider the circumstances under which the contract was made and the matter to which it relates. (Civ. Code, §§ 1639, 1647.) We consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation. (*Id.*, § 1641.) We interpret words in accordance with their ordinary and popular sense and, if the contractual language is clear and does not involve an absurdity, the plain meaning governs. (*Id.*, §§ 1638, 1644.) The determination of the basis for an award of attorneys' fees is a question of law which an appellate court reviews de novo. (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

Here, there is no dispute that under the lease costs for the arbitrator were to be shared equally between the parties. There is also no dispute that the attorneys' fees and costs incurred in an arbitration hearing were to be borne by the party incurring them. Indeed, Saks makes no claim to the costs for the arbitrator and expressly disavowed the "hundreds of thousands of dollars" it incurred in the two arbitration hearings. Rather, the dispute before us involves only the approximately $1 million in attorneys' fees incurred by Saks over a three-year period in the judicial proceedings ancillary to the arbitration.

Saks argues that Section 23.10 "mandates that the prevailing party in any action or proceeding to enforce the [l]ease or obtain a declaration of rights under the [l]ease recover its attorneys' fees and costs from the losing party." (Emphasis omitted.) Saks says this provision controls the allocation of attorneys' fees because the various court proceedings the parties resorted to sought to "enforce provisions of the Lease and for a declaration of their rights" under the lease. Saks describes this prevailing party attorneys' fee

6

rule as the parties' "express agreement" which "contains no exceptions." We are not persuaded. The judicial proceedings in connection with the arbitration awards were not actions to "enforce" or to obtain a "declaration of rights" under the lease, such as a dispute over a contractual term or obligation. In the underlying court proceedings, neither party alleged that the other had violated any provision of the lease, was refusing to comply with one of its provisions, or had breached the lease. The parties' resort to court in connection with the arbitration awards does not reflect a disagreement over a lease term or obligation. Rather, the judicial proceedings underlying Saks' claim to attorneys' fees arose from and were fully consistent with the parties' obligations under the terms of the lease and their agreement in Section 3.1(c) regarding how to settle a Fair Market Rent dispute. Therefore, Section 23.10 does not govern the instant dispute over attorneys' fees.

*Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264 (*Stermer*), does not compel a different result. There, the parties had entered into a contract for the construction of a dental office and Stermer claimed the office was not constructed according to specifications or completed on time. (*Id.* at p. 267.) The dispute went to arbitration pursuant to the contract, which required that " '[a]ny controversy or claim arising out of or relating to this contract, or the breach thereof' " be settled by arbitration. (*Id.* at pp. 267, 272.) Modiano prevailed in the arbitration, and Stermer unsuccessfully moved to vacate the award. (*Id.* at pp. 266, 269.) Modiano sought attorneys' fees based on a provision in the parties' contract, which stated, "Should either party hereto bring suit in court to enforce the terms hereof any judgment awarded shall include court costs and reasonable attorney's fees to the successful party." (*Id.* at pp. 267, 272.) The court rejected Stermer's argument that the suit was not brought to "enforce the terms" of the contract

7

and found Modiano, the prevailing party, was entitled to attorneys' fees. (*Id.* at pp. 272–273.)

Both the contract and the nature of the dispute in *Stermer* are quite distinct from the contract and dispute between Union Square and Saks. While the contract in *Stermer* directed all disputes relating to the construction contract to arbitration and allowed the prevailing party to recover attorneys' fees if any court proceedings were initiated, the lease here established a mandatory arbitration process only for Fair Market Rent disputes during which each party would bear their own costs. Also, the arbitration in *Stermer* was clearly to enforce the terms of the parties' construction contract because it arose from an alleged breach of the specifications and timing set forth in that agreement. In contrast, here there was no alleged breach of the lease that prompted the arbitration or the ancillary judicial proceedings that followed. In arbitrating their rent dispute, both Saks and Union Square simply adhered to the Fair Market Rent settlement process outlined in their lease. *Stermer* does not apply.

Moreover, even if we were to read the language of Section 23.10 as generally applying to every court proceeding involving the lease, it would not apply to arbitral disputes regarding the Fair Market Rent. "Where general and specific provisions [of a contract] are inconsistent, the specific provision controls." (*Iqbal v. Ziadeh* (2017) 10 Cal.App.5th 1, 12; see also Code Civ. Proc., § 1859 ["[W]hen a general and particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it."].) Here, this means Section 3.1(c), which specifically addresses the dispute resolution process for settling Fair Market Rent controls over the more general attorneys' fee provision in Section 23.10.

Based on the plain text, the rule set forth in Section 3.1(c)(iv), which requires each party to pay its own attorneys' fees, applies to attorneys' fees incurred by each party throughout the process for settling Fair Market Rent disputes, not just in the arbitration proceeding itself. The relevant lease provision states, "The *attorneys' fees and expenses of counsel for the respective parties* and of witness *shall be paid by the respective party engaging such counsel* or calling such witnesses." (Italics added.) The language mandates that each party pay the fees for the attorneys it retains. There is no language in this provision that limits the attorneys' fees each party must bear to the amounts incurred solely in or during an arbitration proceeding. Nor is there an exception drawn for fees incurred in related court proceedings. Had the parties wanted to provide such a limitation or draw such an exception, they could have readily done so.

The structure of Section 3.1 and the context of the attorneys' fees provision within Section 3.1 also support this view that attorneys' fees incurred in *any* proceedings related to settling the Fair Market Rent, not just in the arbitration proceeding, are to be paid by the party incurring them. (See Civ. Code, § 1641 [mandating that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"].)

Section 3.1(c) carves out a separate and detailed process for determining the Fair Market Rent for any renewed lease term and this process is not limited to the arbitration proceeding. The process by which Saks must make a demand for arbitration with its proposed rent determination and Union Square must respond to said demand with its own rent determination in Section 3.1(c)(ii) occurs *pre*-arbitration and provides an opportunity to resolve the rent dispute *without* arbitration. The arbitrator

9

selection process described in Section 3.1(c)(ii) also occurs outside the actual arbitration proceeding. These provisions demonstrate that Section 3.1(c)'s scope is not limited to rules pertaining to the arbitration hearing.

Section 3.1(c) also includes two references to ancillary court proceedings as part of the process of determining Fair Market Rent. Section 3.1(c) provides that "the award rendered in any arbitration hereunder may be entered in any court having jurisdiction and shall be final and binding upon the parties." In addition, the arbitrator selection provision in Section 3.1(c)(ii) states that if the parties are unable to agree on an arbitrator, "either party . . . may request appointment of such a qualified person by the then Chief Judge of the United States District Court having jurisdiction over the City and County of San Francisco, and the other party shall not raise any objections as such to such Judge's full power and jurisdiction to entertain the application for and make the appointment." This provision invites the parties to involve the courts in appointing an arbitrator should they be unable to do so on their own. These provisions, which appear in different parts of Section 3.1(c), demonstrate that the parties understood and agreed that judicial involvement was to be part of the process of resolving Fair Market Rent disputes.

The Section 3.1(c)(iv) attorneys' fee provision follows these subsections and appears in the same paragraph and immediately after a sentence which notes that, if the arbitrator fails to act, a successor shall be appointed in the same manner as the original appointment. This placement of the Section 3.1(c)(iv) attorneys' fee provision in Section 3.1(c)—the lease section which focuses exclusively on the determining Fair Market Rent disputes—and among rules which concern matters outside the arbitration hearing and which contemplate judicial involvement is instructive. It demonstrates the

10

parties' intent that the rule requiring each party to bear its own attorneys' fees apply to fees incurred throughout the process for determining Fair Market Rent, including any ancillary judicial proceedings, and that it was not intended to be restricted to fees incurred solely in an arbitration hearing.

*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534 (*Ajida*), supports this interpretation. The parties in *Ajida* entered into a contract to arbitrate any disputes. (*Id.* at 538.) The contract provided that " '[e]ach party's cost of arbitration, attorneys' fees and costs of experts shall be borne in such proportion as the Arbitration Panel may determine.' " (*Id.* at p. 551.) The arbitrators ruled in favor of the respondent and further determined that the parties' agreement for attorneys' fees applied to any future disputes arising out of the arbitration award. (*Id.* at p. 539.) The respondent petitioned the trial court to confirm the award, which the trial court did. (*Ibid.*) On appeal, the respondent requested its attorneys' fees incurred during the appeal, asserting it was entitled to them under the parties' contract. (*Id.* at p. 550.) The appellant argued that the obligation to pay its opponent's attorneys' fees was extinguished when their contract terminated, and thus the respondents were not entitled to attorneys' fees. (*Id.* at pp. 551–552.) The court disagreed and explained: "The contractual fee provision permits an award of attorneys' fees in the arbitrators' discretion. Although the clause is clearly directed at the arbitration proceeding itself, it is broad enough to cover fees on this appeal. We have previously recognized that 'a contract provision for recovery of attorney fees if a party is required to "bring suit" is broad enough to include fees arising in arbitration proceedings.' [Citations.]

We now recognize the obverse: that a contract that permits the recovery of fees in arbitration is broad enough to include fees in related

11

judicial proceedings, including an appeal from the judgment confirming the award." (*Id.* at p. 552.)  While the Section 3.1(c)(iv) attorneys' fee provision requires that each party bear its own fees—the opposite of the contract in *Ajida*—the reasoning set forth in *Ajida* is equally applicable.  That provision, which contains no restrictions or limitations, is similarly broad enough to extend to related judicial proceedings, which here included but was not limited to petitions for the appointment of arbitrators, motions to confirm and vacate the awards, and a writ petition and appeal to this Court.  As in *Ajida*, this conclusion gives meaning to the parties' intent that attorneys' fees incurred during the course of settling Fair Market Rent disputes be borne by the party that incurs them.

While Saks acknowledges that Section 3.1(c)(iv) "provides the only exclusion from this prevailing party fee rule," it argues it does not "come close to excluding any litigation proceedings from that rule."  In Saks' view, the "structure and contents" of Sections 3.1(b) and 3.1(c) make plain that Section 3.1(c) defines the rule for arbitrations.  It adds that "Section 3.1(c) says nothing about attorneys' fees in litigation outside of arbitration.  It does not say the parties bear their own fees and costs in any proceeding relating to Fair Market Rent.  And it certainly does not come close to saying that the Section 23.10 prevailing party rule ceases to apply if a party decides to . . . prosecute court proceedings regarding the arbitration."  Saks asserts the drafters of the lease would have had to include much more explicit language had they intended to carve out a "Fair Market Rent litigation exception" to the prevailing party rule.  We are not persuaded.

"In construing a contract . . . [t]he court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there.

12

[Citations.] Courts will not add a term about which a contract is silent." (*Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486.) Saks premises its argument on the view that the Section 3.1(c)(iv) attorneys' fee rule is limited to costs only incurred in arbitration proceedings, but that is not expressed in the text. The plain text of Section 3.1(c)(iv) provides that "[t]he attorneys' fees and expenses of counsel for the respective parties and of witnesses shall be paid by the respective party engaging such counsel." Further, as explained above, it appears in the section focused on settling disagreements about Fair Market Rent and in the context of multiple provisions that go beyond the arbitration proceeding. Section 3.1(c)(iv) contains no language limiting the rule that each party bear its own attorneys' fees to those incurred solely in an arbitration proceeding, and we will not add such a term this provision.

Saks also contends that the two "modest" references to court proceedings in Section 3.1(c) does not mean that the Section 3.1(c)(iv) attorneys' fees provision extends to all court proceedings. It says neither provision refers to attorneys' fees or comes close to providing that Section 23.10 does not apply. We disagree with Saks' assessment. The portion of Section 3.1(c) which provides that any arbitration award concerning Fair Market Rent "may be entered in any court having jurisdiction" and the provision in Section 3.1(c)(ii) which allows a party to seek court involvement for arbitrator selection expressly contemplate court involvement in settling Fair Market Rent disputes. Indeed, a significant portion of the fees Saks seeks derives from the parties availing themselves of the processes described in these provisions, such as Union Square's petition to confirm the First Award and its petitions to the court to select an arbitrator. These provisions need not reference attorneys' fees because the Section 3.1(c)(iv) attorneys'

13

fees provision appears in the same section of the lease, underscoring the application of the rule to fees incurred in judicial proceedings ancillary to the Fair Market Rent arbitration process.

Saks further argues that the "equities weigh in favor of enforcing the prevailing party provision, because Union Square forced Saks to incur a million dollars of litigation expense beyond arbitration." Not so. In addressing a similar argument, the court in *Kalai v. Gray* (2003) 109 Cal.App.4th 768 (*Kalai*), explained, "Without putting too fine a point on it, equity is irrelevant. Contracts need not be equitable." (*Id.* at p. 777.) The *Kalai* court also observed that the inequitable result criticized by the appellant was "nothing more than the traditional 'American rule' that each party to litigation must bear his own fees." (*Ibid.*) It noted that such a rule could be altered by agreement, but "there is certainly no public policy that obligates (or even allows) us to expand their agreement to cover situations they did not specify." (*Ibid.*)

In sum, we conclude that each party agreed to bear its own attorneys' fees for all proceedings related to settling any disagreement around Fair Market Rent pursuant to Section 3.1(c). The trial court did not err in denying Saks' motion for attorneys' fees the company incurred in judicial proceedings that were part of this process.[1]

### DISPOSITION

The trial court's order denying Saks' motion for attorneys' fees is affirmed. Each party shall bear its own costs on appeal.

---

[1]     Saks has withdrawn, and we therefore do not address, its argument that Union Square "conclusively admitted that attorneys' fees are recoverable in court proceedings under the parties' agreement" by checking a box on the form cover sheet of its petition to confirm the First Award.

14

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Fujisaki, J.

*California Union Square L.P. v. Saks & Company LLC/A162043*

15

Trial Court:      City and County of San Francisco Superior Court

Trial Judge:      Hon. Charles F. Haines

Counsel:          Orrick, Herrington & Sutcliffe, William A. Molinski, David
                  P. Faud, and Benjamin F. Aiken; Moskovitz Appellate
                  Team, Myron Moskovitz for Plaintiff and Respondent.

                  Allen Matkins Leck Gamble Mallory & Natsis, Anthony J.
                  Oliva, Marissa M. Dennis, Stacey A. Villagomez and
                  Marshall C. Wallace for Defendant and Appellant.